BERNS ET AL. v. USREY.

[No. 12,533.   Filed March 31, 1927.]

1. TRIAL.—*Evidence of transactions by some defendants might be considered as to all in action for conspiracy to defraud.*— In an action against a number of persons for damages for defrauding the plaintiff by falsely and fraudulently misrepresenting the value of stock in companies promoted and operated by the defendants, as a means to induce the plaintiff to invest in such stock, evidence of various transactions by the defendants, though sometimes admitted as to part of the defendants only, might properly be considered by the jury as to all.   p. 44.

2. CONSPIRACY.—*Evidence held sufficient to take question of conspiracy to defraud plaintiff to the jury.*—In an action against a number of persons for damages for defrauding the plaintiff by falsely and fraudulently misrepresenting the value of stock in companies promoted and operated by the defendants, as a means of inducing the plaintiff to invest in such stock, the evidence *held* sufficient to take the question of conspiracy to the jury, in view of the false statements in the literature of the company sent to the plaintiff and other unsuspecting persons and other false statements made by the defendants.   p. 45.

3. APPEAL.—*Admission of hearsay testimony held harmless.*— In an action for conspiracy to defraud the plaintiff by falsely and fraudulently misrepresenting the value of stock in companies promoted and operated by the defendants as a part of a scheme to defraud, the admission of hearsay testimony as to the condition and value of the land owned by one of such corporations was harmless error, if any, where other testimony showed conclusively that the stock was worthless. p. 46.

From Hamilton Circuit Court; *Fred E. Hines*, Judge.

Action by Maude R. Usrey against Peter C. Berns and others. From a judgment for plaintiff against part of the defendants, the defendant named and another appeal. *Affirmed.* By the court in banc.

*White & Jones, Weisman & Humphreys* and *Christian & Waltz,* for appellants.

*Noel C. Neal* and *John J. Kelly,* for appellee.

NICHOLS, J.—Action by appellee against appellants and eleven other persons for damages suffered by appellee, growing out of an alleged conspiracy to defraud her by selling her certain shares of corporation stock, by fraudulently and falsely misrepresenting the value of said stock and the assets of the corporations.

It is averred in the complaint, in substance, and briefly stated, that the defendants were the officers, directors and agents of the Indianapolis Securities Company, the American Farms Company and the Investors Banking Service Corporation, all of which companies are now, and have been for two years past, in the hands of receivers and which were wholly insolvent during the times mentioned in the complaint. Said American Farms Company and Investors Banking Service Corporation were practically branches of the Indianapolis Securities Company. The Indianapolis Securities Company was engaged in the sale of its own and the stock of the American Farms Company, and the Investors Banking Service Corporation was engaged in the sale of its own and the stock of the American Farms Company and of the Indianapolis Securities Company. The several defendants occupied various positions as president, directors and agents of the various companies mentioned. Appellants are and were physicians practicing in Greene county, Indiana, and appellant Berns was appellee's family physician. During the year 1920, and prior thereto, appellee was in ill health, during which time she was attended and treated by appellant Berns, in whom she had trust and confidence. Appellants were close personal, business and professional friends, and appellee became acquainted with appellant Van Sandt, whom she regarded as a friend,

and she regarded appellants as men of honor and integrity and had confidence in them.

In 1919, defendants learned that appellee had certain government bonds and building association stock, and entered into a conspiracy among themselves to get possession of said bonds and stock by cheating and defrauding her out of them. Pursuant to such conspiracy, defendants sent her literature containing false and misleading statements as to the condition of said companies and value of their stock, which literature set forth that the Indianapolis Securities Company and American Farms Company were financially sound, and had large and valuable assets and were making great progress, and that their stock was of great value and was growing in value and appealing to appellee and the public to buy it.

Defendants had certain of their agents call upon appellee and make false statements to her on the aforementioned matters, and on or about June 29, 1919, appellants, at the instigation of the other defendants, called upon her to induce her to purchase stock in said companies, and said defendants made certain false statements in said complaint set out, relying on which, she traded her government bonds for stock in the Investors Banking Service Corporation, and traded her building and loan stock for stock in the American Farms Company. Said stock was worthless and because of the fraud of defendants, she suffered a loss of $10,000.

To this complaint, the defendants, including appellants, filed a general denial. There was a trial by jury. At the close of the evidence, the court instructed the jury to find for all the defendants except John M. White and appellants. There was a verdict against appellants and John M. White for $8,860, and for the remaining defendants. Appellants filed separate motions for a new trial, which were each overruled, and thereupon

the court rendered judgment upon the verdict, from which this appeal.

The errors relied upon for reversal are that the court erred in overruling the separate motions of appellants for a new trial.

Appellants, contending that the damages are excessive, call attention to the fact that by the averments of the complaint there were charges of two transactions in which appellee claims to have been defrauded, one occurring on June 29, 1919, in which she was induced to exchange $5,200 worth of Building and Loan stock for $5,000 par value of shares of stock in the American Farms Company, and the other occurring about thirteen months thereafter, in which she was induced to exchange government bonds worth $2,000 for shares of stock, of the par value of $1,600, in the Investors Banking Service Corporation. It is appellants' contention that these two transactions were separate and several, that there is no evidence whatever to show that either of these appellants had anything to do with the second transaction, and that, therefore, appellants' liability could not, in any event, exceed the damages suffered by reason of the exchange of the Building and Loan stock.

But, after an examination of all the evidence in this case, which covers 1,048 pages in the record, we have to say that we are not impressed with appellants' contention. We are of the opinion that there was abundant evidence from which the jury might find there was a continuing conspiracy between the officers and agents of the companies involved, commencing with the promotion of the fraudulent companies, by which they undertook to defraud appellee and others, and lasting until the special session of the legislature of 1920 passed the Securities Act, making it a crime to pay dividends out of anything except net earnings. This compelled

the companies here involved to go into the hands of receivers, when they were found to be practically without assets, except such as were encumbered for more than they were worth.

These companies, through their officers, who were defendants herein, were first in touch with appellee through their literature which was mailed out. Afterward, she was visited by appellants and others, and the negotiations resulted in appellee's losses for which she seeks damages. This literature, in part, consisted of a booklet or pamphlet describing the American Farms Company, which is in the record, and in appellants' brief, as "Exhibit 49," covering sixty pages of the brief, and was in the usual tenor of the literature of such promoting schemes, exalting the climate, location, productivity of the soil, etc. We cannot undertake to quote from it extensively, but as a sample of its contents, we quote from page 11, as follows:

"SAFE SECURE, PROFITABLE, INVESTMENT
"8,286 ACRES OF FARM LANDS PURCHASED BY
THE AMERICAN FARMS COMPANY

"6,000 Acres now Under Cultivation. More than $25,000 worth of mules, stock, buildings and equipment also taken over with this producing property by the American Farms Company.

"There are over eighty tenant houses on the property, housing scores of laborers actively engaged in farming the 6,000 acres now under cultivation.

"This property has the Location—Soil—Fertility—Water—Cattle—Mules—Hogs—and Equipment—the Markets—Transportation—and Labor—in fact, it has everything necessary for great activity and larger earnings."

But Charles A. Wood, who had been president, treasurer and trustee of the American Farms Company, tes-

tified that the company began farming operations in
the spring of 1919, and continued until 1922; that the
land farmed was located at different places on the 7,000
acres, during which time 150 acres was put under the
plow; that they took out stumps and downfallen stuff
and cleared it up; that in June, 1919, there was about
100 acres cleared; that there was probably 1,000 acres
that could be cultivated without any stumpage, and the
remaining 6,000 acres had stumps and scattered growth
of timber; that when they started farming, there was
probably about 150 acres cleared, and afterwards they
cleared up about 150 or 200 acres; that he purchased
2,000 acres of this land for $7.50 an acre, and sold it
to the American Farms Company for $15 an acre.
Against this land there were mortgages in the total
amount of $111,000, $100,000 of which amount was
also on a tract of 5,000 acres the title to which was
never in the American Farms Company, and which tract
was included to make up the 7,000 acres claimed by the
company. The company paid some taxes on the land,
but it does not appear that the interest on the mort-
gages was ever paid. It appears by uncontradicted evi-
dence that in June, 1919, the American Farms Company's
assets consisted of 2,000 acres of land, mortgaged for
all that it was worth, no cattle, three teams of mules,
and a small amount of other personal property, of lit-
tle value. We deem it unnecessary for us to incum-
ber this opinion further by making any statement of
the assets and liabilities of the Investors Banking Serv-
ice Corporation. It is sufficient for us to say that its
available assets to meet its obligations were as wholly
inadequate as were the assets of the American Farms
Company.

We fully agree with appellee's contention that the
trial court was wrong in instructing the jury to return
a verdict in favor of the defendants that were the of-

ficers and directors of these companies, but there
1. is no cross-error assigned. We are fully con-
vinced, however, that, from the time of the promo-
tion of these companies, there was such a concert of
action to sell the worthless stock issued by them to
unsuspecting purchasers as to amount to a continuous
conspiracy to defraud on the part of all who partici-
pated therein, including appellants. We therefore hold
that evidence as to the various transactions, though
sometimes admitted as to a part of the defendants,
might properly be considered by the jury, and no doubt
was so considered, as to all. The principle that should
govern the jury under the circumstances here involved
is thus stated with reference to the alleged conspirators
in *Roberts* v. *State* (1919), 188 Ind. 713, 721, 124 N.
E. 750:

"The question whether or not Pierson and Drake had
entered into a common purpose or design to commit, or
to procure to be committed, the crime charged, and
whether or not appellant connected himself with that
common purpose, were questions of fact for the jury
alone. For the purpose of determining these questions,
the jury had a right to infer the actual fact of conspir-
ing from all of the circumstances satisfactorily proved
without any direct proof of concurring conduct of the
defendants. 'Any joint action on a material point, or
collocation of independent but co-operative acts, by per-
sons closely associated with each other, is held to be
sufficient to enable the jury to infer concurrence of
sentiment.' 2 Wharton, Crim. Law (9th ed.) §1398;
*Archer* v. *State* (1886), 106 Ind. 426, 432, 7 N. E. 225."

As was said in *Rigsby* v. *State* (1907), 152 Ala. 9, 44
So. 608: "The proof of a conspiracy oftentimes, from
the very nature of things, is dependent upon circumstan-

tial evidence, and in the establishment of the conspiracy by circumstantial evidence a wide latitude sometimes becomes necessary in the introduction of the evidence as to the circumstances tending to show a conspiracy; circumstances which, when taken separately, may appear, indeed, very slight, but, when grouped together, become very strong and convincing. A circumstance when taken separately may seem irrelevant; but, when taken in connection with some other circumstance, its relevancy becomes apparent."

Here, the exaggerated false statements of the officers of the American Farms Company would not, within themselves, have been sufficient to convict appellants of being participants in the conspiracy, but these statements, taken in connection with the false statements made by appellants, as testified to by appellee or her husband, that the company owned 7,000 acres of land, that the stock was worth double its face value, that it was earning and paying eight per cent. dividends, that there were enough cattle being raised on the land to pay the dividends, that the company was building a winter resort on the land to be used by the stockholders free of charge, that they each had several thousand dollars invested in the stock, that appellant Van Sandt had been to see the land and knew all about it, were sufficient to make at least a *prima facie* case of conspiracy for the consideration of the jury. As a fact, appellant Van Sandt had never seen the land, and at the time these representations were made, the company had but 2,000 acres of land incumbered for more than it was worth, and an inconsiderable amount of personal property, as its sole assets. It was not paying the interest on its mortgages, and had no income throughout its entire existence except about $400 to $500. The preferred shares of stock which appel-

lants were offering to appellee, and which they sold to her, had been sold to the Indianapolis Securities Company for fifty cents on the dollar, and that company was paying twenty-five per cent. commission for its sale. It is to be observed that the defendant White, against whom the judgment was rendered along with appellants, was an active participant in the negotiation of the sale of this first stock bought by appellee. While appellants were not in evidence when White negotiated the second sale of stock, that of the Investors Banking Service Corporation, appellant Berns had given him a certificate of good character to the effect that he was a fine genteel man, and that he could almost stand behind any transaction which White would make concerning the company. The evidence shows that appellant Berns' office was generally the place of meeting during the period of time covered by these sales, and that the three, appellants and White, were intimate in their association, and active together in their negotiations of stock. We hold that the jury might reasonably infer that the sale of the Investors Banking Service stock was a part of the general conspiracy.

Appellants complain that witness Elmer E. Stephenson was permitted to testify as to the condition of the land, and its value, he never having seen it, be-

3.    cause such evidence was hearsay. The witness was the attorney for the receiver of the American Farms Company, and, as such, made an investigation of the value of the property that came into the hands of the receiver, and testified as to the results of his investigation. Even if his testimony was hearsay, it was harmless, for the evidence, aside from his testimony, shows conclusively that appellee's stock in that company was worthless. We are so convinced that a right result was reached by the jury that we deem it unnecessary to discuss the instructions, though we may

say that, from our examination of them, the jury was well instructed as to the law.

The judgment is affirmed.

Dausman, J., absent.