### HEWITT *v.* WESTOVER ET AL.

[No. 12,993.   Filed November 23, 1927.]

1. PLEADING.—*Motion to make complaint more specific properly overruled.*—In an action against the officers and directors of a corporation for conspiracy to defraud the public, including the plaintiff, the complaint averring false representations as to the financial condition of the company, as a means of selling its stock, which was worthless, it was not reversible error to overrule a defendant's motion to make the complaint more specific and to state the facts supporting the conclusions therein, as the complaint was sufficient to apprise him of the cause of action which he was called on to defend and he must have been in possession of the details which his motion called for.  p. 511.

2. FRAUD.—*Complaint charging conspiracy to defraud held sufficient.*—Complaint held sufficient to state a cause of action for conspiracy to defraud plaintiff and others by fraudulent representations in sale of corporate stock.  p. 512.

3. FRAUD.—*Evidence held sufficient to sustain charge of fraud in sale of corporate stock.*—Evidence *held* sufficient to sustain verdict for the plaintiff in an action against the vice-president of a corporation and other officers thereof for conspiracy to defraud the plaintiff by fraudulent representations as to the stock of the company.  p. 514.

4. APPEAL.—Appellate tribunal does not weigh the evidence. p. 514.

5. APPEAL.—*Alleged errors as to admissibility of evidence not considered because of non-compliance with rule as to briefs.*—Alleged errors as to the admissibility of evidence will not be considered on appeal where the evidence involved, together with the objections thereto and the rulings of the court thereon, is not set out in the statement of the record in appellant's

brief, as required by cl. 5 of Rule 22 of the Supreme and Appellate Courts. p. 514.

6. FRAUD.—*Instruction holding knowledge of falsity of statement essential to constitute fraud held properly refused.*—In an action for fraud in making false representations as to the financial condition of a company and thereby inducing the plaintiff to purchase stock therein, an instruction that unless the defendant knew that the representations made by him were false, they would not be fraudulent, was properly refused, as such knowledge is not an essential element of fraud in all cases. p. 515.

7. FRAUD.—*Instruction properly refused which told the jury that defendant would not be liable for false representations unless he took part in sale of worthless stock to plaintiff.*—In an action against the officers and directors of a corporation for fraudulent representations as to the financial condition of the company and thereby inducing the plaintiff to purchase worthless stock therein, a requested instruction that any defendant would not be liable unless he took part in the sale of such stock was properly refused as misleading, as he might, by way of advertisement or otherwise, have induced the plaintiff to make the purchase of the stock, although he had not taken part directly in the sale. p. 515.

8. FRAUD.—*Instruction as to company operated by defendants being common-law trust was properly refused in action against defendants for fraud in misrepresenting condition of company.*—In an action against the officers and directors of a "securities" company for fraudulent representations as to the financial condition of a "farms company," a subsidiary branch of the securities company, thereby influencing the plaintiff to purchase stock in the "farms company," which was worthless, an instruction relating to the claim of the defendants that the "farms company" was a common-law trust and not a corporation was properly refused, as that fact could make no difference as to the liability of the defendants. p. 516.

9. TRIAL.—*In action for fraud in misrepresenting condition of company in which stock was sold to plaintiff, instruction was not objectionable because it omitted all reference to the reasonableness of representations made or investigation as to their truth or falsity.*—In an action against the officers and directors of a "securities" company for fraudulent representations as to the financial condition of another company in which they were interested, thereby inducing the plaintiff to purchase stock in the latter, an instruction was not objectionable because it did not state what representations the plaintiff could rely on, nor contain any statement as to his investigation of the truth or

falsity of such representations, no representation proved being so unreasonable that plaintiff was not justified in relying on it without investigation. p. 516.

From Shelby Circuit Court; *H. C. Morrison*, Judge.

Action by Charles E. Westover against Horace B. Hewitt and others. From a judgment for plaintiff, the defendant Hewitt appeals. *Affirmed.* By the court in banc.

*Charles A. Dryer* and *Wray & Sullivan*, for appellant.
*Williams & Pell* and *John J. Kelly*, for appellees.

NICHOLS, J.—This is an action by appellee Westover against appellees Sawyer, Mackay, Spencer and appellant, averring that they were directors and officers in the Indianapolis Securities Company, and against appellee Woods, averring that he was president of the American Farms Company, and that said persons had entered into a conspiracy to cheat and defraud the public, including appellee Westover, hereinafter mentioned as "appellee," in the sale of worthless stocks in the farms company by inserting in newspapers in Indiana advertisements that the securities company had for sale preferred stock in the farms company, which was sound financially and had large and valuable assets, and that said Spencer, in furtherance of said conspiracy, made representations as to the value of said stock and that said advertisements so published and representations so made were false; but that appellee, believing said statements and representations were true, was induced to and did buy stock in said farms company and pay $1,000 therefor, which was worthless, and he was damaged thereby.

Appellant filed his separate motion to make the amended complaint, which was in one paragraph, more specific, and to state facts to sustain conclusions pleaded, which motion was overruled. Appellant then sepa-

rately filed his demurrer to the amended complaint which was overruled. He then filed his answer in general denial. General denials were filed by the other defendants. The cause was submitted to a jury for trial, resulting in a verdict for appellee against appellant and his codefendants.

Appellant filed a separate motion for a new trial which was overruled, and judgment was rendered on the verdict for $1,300, from which this separate appeal, appellant making his codefendants appellees.

The errors relied on for reversal are the court's action in overruling appellant's motion to require appellee to make his amended complaint more specific and to state facts sufficient to sustain conclusions pleaded, in overruling the separate and several demurrer of appellant to the amended complaint, and in overruling appellant's motion for a new trial.

It is averred in the amended complaint, in substance, that appellee is a farmer and, at the times mentioned, was engaged in farming near a small town in Indiana called Falmouth. The defendants were officers, directors and agents of the securities company and the farms company, both of which companies are now and have been for the past two years or more in the hands of receivers, and were during the times mentioned wholly insolvent and subject to be placed in bankruptcy or receivership at any time; said farms company was practically a branch or subsidiary of the securities company and was so represented by the defendants to appellee and to the public; the securities company was engaged in the sale of its own and the stock of the farms company; during the times mentioned, Sawyer was president of the securities company, and he and the other defendants, except Woods, comprised the board of directors. Woods was president of the farms company. All defendants lived in Indianapolis; prior to the month

of January, 1919, defendants entered into a conspiracy
among themselves to cheat and defraud the public, in-
cluding appellee, in the sale to the public of worthless
stock of the farms company; in furtherance of such
conspiracy to defraud, they had inserted in newspapers
of the state advertisements stating that the securities
company had for sale preferred stock of the farms com-
pany which had been paying and would pay eight per
cent dividends, that the farms company was financially
sound and had large and valuable assets and the pur-
chase of such stock was a good and safe investment, all
of which representations were false; said advertise-
ments contained an urgent appeal to the public to invest
its money in the stock of said company; appellee saw
and read the advertisements and believed the same,
and, so believing, he, on February 28, 1919, called at the
office of the securities company to invest his money in
the stock of the farms company, and there met said
Spencer, who, in furtherance of said conspiracy to de-
fraud, and with the aid and connivance of the other
defendants, stated to appellee that the farms company
was a branch of the securities company and the securi-
ties company stood back of the farms company, that
said securities company was offering for sale preferred
stock in the farms company, which had been paying and
would continue to pay eight per cent. dividends, that
said farms company was sound and reliable, that the
stock of the farms company was the same as a first
mortgage, that said stock was very valuable, was worth
more than par and was increasing in value, that the
farms company owned several thousand acres of rich,
black and valuable land in Alabama and a large amount
of personal property located thereon, that eight per cent.
dividends had been and would be paid semi-annually,
and he exhibited to appellee prospectuses, pamphlets
and literature which had been composed, printed and

published by defendants in furtherance of said conspiracy to defraud, which set forth said representations and contained an urgent appeal to the public to invest their money therein. All of such statements and representations as to the condition of the farms company and the value of its stock were false, and known to defendants to be false, and were made for the purpose of inducing appellee to part with his money in the purchase of such stock, which was of no value whatever. That he believed said statements and representations so made to him as to the condition of the farms company and the value of its stock and, relying upon them as the truth, he was thereby induced to and did pay over to defendants $1,000 in cash for such stock, of the face value of $1,000. That said statements and representations so made to him by defendants as to the value of said stock and as to the dividends which it would pay and was paying, and as to its condition, were false, that said stock was worthless and would not pay and had never paid a *bona fide* dividend, and that when defendants made these representations and statements, they knew them to be false, knew that said stock was worthless and that said stock would not pay a lawful dividend, and such representations were made to appellee to induce him to part with his money for said stock.

That at the times mentioned, defendants represented to appellee and the public that said farms company owned large and valuable tracts of land in Alabama and large amounts of personal property located thereon, but in fact such company held no title to said land, and said land was not owned by it; and, as to part of such land, the farms company had a contract of purchase, which had been forfeited by it, and on all of said land were large mortgages which had been foreclosed and the title to the land stood in the names of others than the com-

pany; the personal property on said land was heavily mortgaged and the mortgages had been foreclosed.

That said farms company was being operated by defendants for the sole purpose of selling worthless stock to the public and thereby procuring large sums of money without giving any consideration therefor; defendants knew the condition and purposes of said company and the value of its stock, knew that said company could not pay a *bona fide* dividend and never had, but had paid out money as dividends which were not from earnings but were derived from stock sales, and were paid to lead purchasers and prospective purchasers of such stock to believe that said stock was a dividend-paying stock. Defendants knew that said company was a fraud and was being operated for fraudulent purposes, knew that it was insolvent, knew that its liabilities far exceeded its assets and knew that it was subject to be placed in bankruptcy or receivership at any time.

That since the acts complained of herein were consummated, appellee has discovered that there is no such corporation as the American Farms Company, that said defendants were doing business under that name claiming to be a common-law trust, and that said American Farms Company was never anything but a scheme and a cloak under which defendants sought protection in the sale of its alleged stock.

By reason of these facts, he has been damaged in the sum of $1,500, for which he demands judgment.

It would seem that by a casual reading of the complaint, which we have set out in substance, appellant must have been apprised of the nature of the action which he was required to defend, especially where appellant was a director and vice-president of the securities company, and must have been in possession of the details which he says are not al-

1.

leged. We do not see that appellant has suffered by reason of the court's ruling, and we hold that it was not reversible error to overrule the motion to make the complaint more specific. *Lake County Agrl. Society* v. *Verplank* (1919), 71 Ind. App. 186, 124 N. E. 494.

The complaint is clearly sufficient to constitute a cause of action against the defendants thereto, and

2. there was no error in overruling appellant's demurrer thereto.

Appellant contends with much earnestness that the evidence was wholly insufficient to sustain the verdict, but in this contention we cannot concur. The exploitations of the two companies here involved were before us in *Berns* v. *Usrey* (1927) *ante* 38, 155 N. E. 717, and on the facts then before us, we held that there was abundant evidence from which the jury might find that there was a continuing conspiracy between the officers and agents of the companies involved, commencing with the inception of the fraudulent companies, with which they undertook to defraud appellees therein, and lasting until the legislature in special session passed the Securities Act, (Acts 1920 [Spec. Sess.] ch. 26) which resulted in the receivership mentioned herein. Of course, we cannot take the facts in evidence in that case for the purpose of determining the questions here involved. But we may say that the facts before us in this case are certainly confirmatory of the conclusion which we reached in that case. It is practically conceded here that the whole scheme was fraudulent in its inception, and that, through it, appellee was among those who were defrauded. Appellant makes no contention to the contrary, but defends only as to any complicity on his part in the fraudulent scheme, and contends that there is no evidence whatever to connect him with any conspiracy to defraud appellee, or the public. He presents as a rule of law that in an action

for damages against one of several directors of an insolvent corporation alleging a conspiracy to cheat and defraud the public, evidence of the acts of codirectors in which he did not participate, or acquiesce with knowledge, is inadmissible against him to prove the formation of a conspiracy, or his connection with it. Conceding as an abstract proposition of law that this may be true, especially where it does not appear that there was any evidence whatever of complicity in the fraudulent scheme, or evidence from which the jury might infer complicity or knowledge of the fraudulent transactions, let us briefly review the evidence as to appellant's relations to the company, and its business affairs. The securities company was organized in 1912, and about a year after its organization, he became a director thereof. He had been vice-president for several years, prior to the transaction here involved and continued thereafter both as director and vice-president until the company went into the hands of a receiver. It was his custom to attend the meetings of the board of directors, at which meetings the important affairs of the company were discussed. The securities company purchased 494,000 shares of the farms company stock for $247,000, or fifty cents on the dollar, $2,500 cash, and monthly deferred payments of $2,500 each, without interest, thus extending over a period of more than eight years. The stock was extensively advertised in the press of the state, including the Indianapolis Star, and, in the office of the company, was the literature advertising this stock for sale and there were on exhibit cotton, corn, potatoes, peanuts, etc., represented to be the products of the lands of the farms company. Appellant and Sawyer had known each other for many years, having attended grade school together in their boyhood days. He had also known the other officers of the se-

curities company for many years. The literature of the securities company contained the name of appellant as vice-president and director. In *Scheib* v. *United States* (1926), 14 Fed. (2d) 75, on page 80, the court, speaking of one of the defendants, says: "His vice presidency and directorship is also to be considered. His personality and standing in the community were much employed to help inspire public confidence in the concern, and to further sale of its stocks." In July or August, 1920, appellee, not having received his semi-annual dividends went to Indianapolis and to the securities company's office to inquire about the matter, and there met appellant, who, as appellee testifies, showed him a book of pictures regarding the land and said to him, "You have a good investment—just as we represented to you," and he further told appellee that he ought to go down there and buy some of the land, and that it would be another good investment, appellant saying that he had seen the land and that it was good land.

It thus appears from this evidence that not only had appellant joined in the representations made, but that he was still ready to confirm the same. It is true that appellant denies that he met appellee at the office of the company as appellee testified, or that he made any such representations, but this was for the jury, and it has decided that it did not believe appellant's statement. We do not weigh the evidence.

3, 4.

Appellant's motion for a new trial, as reasons therefor, undertakes to present numerous alleged errors as to the admissibility of evidence; but we do not find the evidence involved, together with the objections thereto and the rulings of the court thereon, in the statement of the record. The fifth clause of Rule 22 of the Supreme and Appellate Courts expressly provides that appellant's brief shall contain a concise statement of so much of the record as fully pre-

5.

sents every error and exception relied on. Having failed to comply with the provisions of such rule in respect to the alleged errors, this court does not consider the questions with reference thereto which appellant undertakes to present in his points. *Orient Ins. Co.* v. *Kaptur* (1911), 176 Ind. 308, 311, 95 N. E. 230; *Cleveland, etc., Co.* v. *Belange* (1922), 78 Ind. App. 36, 56, 135 N. E. 367. We may say, however, that in the absence of any discussion of the points which appellant undertakes to present and with no authorities cited to sustain them, we do not discover any reversible error in the court's rulings.

Instruction No. 4 tendered by appellant and refused would have told the jury that appellee must prove that appellant knew that the representations that he made were false before such representations would be fraudulent. Such is not the law. *Kirkpatrick* v. *Reeves* (1889), 121 Ind. 280, 22 N. E. 139; *Maywood Stock, etc., Co.* v. *Pratt* (1915), 60 Ind. App. 131, 110 N. E. 243; *Williams* v. *Hume* (1925), 83 Ind. App. 608, 149 N. E. 355. The instruction was properly refused, and for the same reason there was no error in refusing instruction No. 5.

By instruction No. 7, appellant asked the court to instruct the jury that if the securities company was selling the farms company stock as agent of the farms company, then none of the officers or directors would be liable for fraudulent representations unless such officer or director took part in such sale. We think this instruction would have been misleading. Appellant might not have taken part directly in the sale, and yet, by his representations, by way of advertisement or otherwise, might have induced appellee to make the purchase of the stock. Further, we do not understand that it is claimed that the securities company was acting as agent of the farms company but

rather that it was selling the stock which it had purchased of the farms company.

There was no error in refusing to give instruction No. 10 tendered by appellant. Whether the farms company was a common-law trust or a corporation could make no difference as to the liability of appellant and his codefendants. The real question at issue was as to whether appellee was defrauded, and, if so, were the defendants, including appellant, the ones who defrauded him.

Appellant complains of instruction No. 10 given by the court on its own motion upon the ground that the instruction failed to say what statement of an existing fact a contracting party may rely on, and that it leaves out of it the reasonableness or unreasonableness or truth or falsity of such statement. A similar objection to this was raised to an instruction in the case of *Jones* v. *Hathaway* (1881), 77 Ind. 14, where, on page 25, the court says: "This objection cannot be sustained. The appellees had the right to rely upon the appellants' representations, and were under no obligation to inquire into their truth or falsity." There was nothing in the representations which it is claimed were made to appellee in this case of such an unreasonable character that appellee was not justified in relying upon them without making investigation as to their truth or falsity.

The court's action as to numerous other instructions is challenged, but, after examining these instructions, we conclude that the objections with reference thereto are technical rather than substantial, and we cannot see that anything will be gained by considering them. The jury was well instructed as to the law of the case.

We find no reversible error. Affirmed.

Dausman, J., absent.