**FIRST NATIONAL BANK OF DODGE CITY, KANSAS, Appellant,**

v.

**Kelly PERSCHBACHER, Appellee.**

**No. 7545.**

United States Court of Appeals Tenth Circuit.

Aug. 17, 1964.

Wm. W. Gilbert, of Gilbert, White & Gilbert, Santa Fe, N. M. and George Stallwitz, of Lilleston, Spradling, Gott, Stallwitz & Hope, Wichita, Kan. (James A. Williams, of Williams, Larson & Voss, Dodge City, Kan., with them on the brief), for appellant.

Henry A. Kiker, Jr., of Smith, Kiker & Ransom, Albuquerque, N. M., and Charles D. Alsup, of Krehbiel, Alsup & Beck, Clayton, N. M., for appellee.

Before MURRAH, Chief Judge, and BREITENSTEIN and SETH, Circuit Judges.

MURRAH, Chief Judge.

The appellant-bank brought this diversity suit to recover damages allegedly sustained when appellee-Perschbacher refused to honor three sight drafts drawn upon him by one Robinson, an insolvent cattle trader. The theory of the complaint tried to the Court is that the drafts were issued pursuant to a conspiracy between Perschbacher and Robinson to fraudulently secure credit from the appellant-bank for drawer-Robinson; and, that relying upon Perschbacher's implied representations in the acceptance of prior, numerous and similar drafts, the appellant-bank extended immediate credit on the dishonored drafts to its detriment.

This appeal is from a judgment for Perschbacher, based upon factual findings which are not now in dispute to the effect: Perschbacher and Robinson, both cattle traders, had transacted business involving the exchange of cattle for many years. In February, 1961, Robinson opened an account with the appellant-bank and, on the basis of his credit reputation, was extended the privilege of immediate credit to his account upon deposit of sight drafts. Thereafter, the transactions which gave rise to this lawsuit were carried on in the following manner: Robinson would call Perschbacher in New Mexico on the telephone, and tell him that he could purchase a certain group of cattle for a certain price, and that he did not have sufficient funds on hand with which to purchase the cattle himself. He would offer to purchase the cattle for Perschbacher's account and undertake to resell them to one or more persons for the mutual benefit of himself and Perschbacher, if permitted to draft upon Perschbacher for the purchase price. Perschbacher would authorize such procedure with the understanding that the cattle in question were his as of the time of his acceptance of the draft, even though Robinson retained possession of the cattle until he resold them. As soon as Robinson notified Perschbacher that the cattle had been sold, Perschbacher drafted back against Robinson for the amount of the advanced purchase price plus an agreed share of the profit. Occasionally a cattle sale resulted in a loss, but Perschbacher always realized a nominal amount in addition to the advanced purchase price as "commission," i. e., Robinson stood the loss.

The trial Court specifically found that the sight drafts presently involved were the first to be drawn against Perschbacher without a prior agreement between the parties; that Perschbacher had adequate funds to honor the authorized drafts at all times; and, that he "did not intend or purpose to defraud" the appellant-bank. When the first of the three drafts involved here was presented to Perschbacher's bank, the bank called him for acceptance. Having no prior knowledge of the draft, Perschbacher called Robinson to inquire about it. Robinson was unable to give a satisfactory answer and requested Perschbacher to accept the draft so that "it would not look bad at his bank, when the draft was returned." Perschbacher refused and dishonored the draft. When shortly thereafter the other two drafts were presented for acceptance without a prior understanding between the parties and were dishonored, the appellant-bank asked for a conference, and Perschbacher went to Dodge City. After conferring

444

with the bank's officers, Perschbacher called upon Robinson and learned for the first time that he was hopelessly insolvent.

In the face of these undisputed facts, appellant now concedes that the original theory of its lawsuit is untenable. It candidly admits that Perschbacher cannot be held "directly liable because of implied-in-fact representations" due to the "long course of dealings between himself and Robinson." Appellant now contends, however, that it is entitled to recover as a matter of law, on the theory that the admitted facts, in and of themselves, prove a civil conspiracy to which Perschbacher was unwittingly a party; and, that he is, therefore, vicariously liable by reason of the workings of the conspiracy. In terms of the traditional definition of actionable civil conspiracy, the theory seems to be that Robinson and Perschbacher formed an arrangement or combination to accomplish a lawful purpose, i. e., to furnish Robinson with short term credit, by unlawful means, i. e., the sight draft transactions, which appellant likens unto an unlawful check "kiting" scheme. See: Fidelity And Casualty Co. of New York v. Bank of Altenburg, 8 Cir., 216 F.2d 294; and Falconi v. Federal Deposit Insurance Corporation, 3 Cir., 257 F.2d 287.

■ The conclusive answer is simply that there was no evidence of an agreement or scheme of any kind between Perschbacher and Robinson. The relationship between the parties was on a transaction by transaction basis. Robinson simply called Perschbacher, offering to buy cattle for Perschbacher's account. Perschbacher authorized the purchase by sight draft. When Robinson drew the draft on Perschbacher without former consent, it was dishonored. There is nothing conspiratorial or wrongful in this course of conduct. Nor, was there anything unlawful in the drawing or acceptance of the authorized sight drafts. There was no "false credit" obtained in exchange for "worthless" paper, as in Fidelity And Casualty Co. of New York v. Bank of Altenburg, supra. When such drafts were drawn, funds were readily available and they were paid as authorized. The drafts involved in this suit were admittedly unauthorized.

■ We agree with the trial Court that the appellant-bank extended immediate credit to Robinson on the sight drafts solely in reliance upon its own knowledge of Robinson and his credit reputation.

■ Appellant alternatively, and for the first time on appeal, invokes the United States Packers and Stockyards Act of 1921, 7 U.S.C. § 181 et seq., as a basis for Perschbacher's liability to the bank. It is suggested that Perschbacher was a "registered dealer" and Robinson "seems to be a 'market agency' under the statute;" and, that the Act in some way prohibits these transactions. It is sufficient to the disposition of this lawsuit that the provisions of the Act were not invoked as a basis for imposing liability upon Perschbacher in the trial Court, and we will not re-try the case here on any theory advanced under the Act.

The judgment is affirmed.