**L. L. STROUD and John A. Gillies,**
**Appellants,**

**v.**

**B-W ACCEPTANCE CORPORATION,**
**Appellee.**

**No. 8560.**

United States Court of Appeals
Tenth Circuit.

Jan. 25, 1967.

---

William Hedges Robinson, Jr., Denver, Colo. (Robinson, Tilton & Robinson, Denver, Colo., with him on the brief), for appellants.

Paul S. Goldman, Denver, Colo. (Henry & Adams, Denver, Colo., with him on the brief), for appellee.

Before PICKETT and SETH, Circuit Judges, and STANLEY, District Judge.

SETH, Circuit Judge.

After trial to the court, judgment was entered against the appellants, defendants below, for $334,277.64, plus attorney's fees of $10,000.00. The appellants have taken this appeal. The facts may be summarized briefly as follows:

The appellants were sole shareholders in the Medalion Apartment Hotel, Inc. (hereinafter Medalion). Medalion built and operated an apartment hotel in Colorado Springs, Colorado, and the first tenants, some of whom were business firms, apparently took possession in early 1962. It appears that Medalion's apartments were of the "luxury" type, and that established rental charges were approximately fifty per cent higher than for existing facilities in Colorado Springs. Medalion contracted with the York Corporation (hereinafter York) for the purchase and installation of air conditioning and heating equipment in the building. Medalion also purchased kitchen appliances for the building from Allied Appliances, Inc. (hereinafter Allied). Medalion secured payment for the heating and air conditioning equipment by executing a chattel mortgage to York in the sum of $309,324.77, of which $223,421.36 is shown as the "cash selling price" and $85,903.41 is shown as the "credit service charge." Medalion executed a similar chattel mortgage on the kitchen appliances to Allied for the sum of $39,756.70, of which $28,705.20 is shown as the "cash selling price" and $11,051.50 is shown as the "credit service charge." Medalion also executed promissory notes in conjunction with the foregoing chattel mortgages by which it agreed to pay the total of each chattel mortgage, i. e., the sum of "cash selling price" and "credit service charge," in equal monthly installments for seven years, the first installments being due on December 15, 1962.

Shortly after the foregoing chattel mortgages and promissory notes were executed they were all assigned to the appellee, B–W Acceptance Corporation, plaintiff below (hereinafter B–W).

B–W and York are both subsidiaries of Borg-Warner Corporation. By appropriate instruments, the appellants each personally guaranteed payment of the chattel mortgages and promissory notes. Each guaranty agreement provided that the guarantor should pay fifteen per cent of the obligations so guaranteed as attorney's fees if collection were necessary. The total face amount of the chattel mortgages and promissory notes was $349,081.47, and it appears that Medalion had paid $14,803.83 before suit was brought by the appellee. The record discloses that Medalion's apartment hotel was placed in receivership for the benefit of creditors in March 1965.

Upon its findings that Medalion was indebted to the appellee for the balance due on the two promissory notes, and that the individual appellants were similarly liable under the guaranty agreements, the District Court concluded that the appellee should have a several and joint judgment against Medalion and the appellants for $334,277.64, and that the appellee have a several judgment against each appellant for $5,000.00 for attorney's fees, as provided in the guaranty agreements.

Failure of consideration was the sole defense raised by the appellants in their initial pleadings to the appellee's suit on the promissory notes and guaranty agreements. The appellants in these pleadings claimed they were relieved of their obligations because York had breached its contract relative to installation and performance of the heating and air conditioning equipment, which was the consideration for the larger of the two chattel mortgages and promissory notes. The appellants alleged the equipment was improperly installed and operated unsatisfactorily, thus causing tenants to complain, move out of the building, or move from higher rent "corner apartments" to less expensive apartments. The appellants also alleged that the appellee was not a holder in due course and that any defenses they might assert against York could be asserted against the appellee B–W because both were subsidiaries of Borg-Warner Corporation.

The record discloses that the pretrial conference resulted in an order which framed the contested issues as York's alleged breach of contract and the status of the appellee as a holder in due course. The record before us on appeal reveals that the trial proceeded along the lines established in the pretrial conference; the appellee offered evidence showing that any persistent difficulties with the heating and air conditioning equipment, after an initial "shake down" period, were due to the design of the building, and not to improper installation or operation of the equipment. The appellants offered evidence showing that the building was either too hot or too cold, that air in the apartments failed to circulate and became stale and close, that tenants complained, and that the building developed a bad reputation in Colorado Springs because of the heating and cooling difficulties.

The District Court found that Medalion had at no time intended or attempted to rescind the contract with York; that there was little difficulty with the heating and cooling systems after 1963; that considerable work was done by York to make the heating and cooling systems operate efficiently; that the York equipment was still in use in the building; and that the receiver had rented the building except for certain apartments withheld for the summer trade in Colorado Springs. Although the findings and conclusions of the District Court do not expressly state that York had fulfilled its contract, the conclusion to be reached from the foregoing findings is that York did not breach its contract with Medalion.[1]

---

1. The record discloses that no issues were raised at trial regarding Medalion's contract with Allied for the kitchen appliances.

The record before us reveals substantial evidence supporting the trial court's findings, and the findings support the conclusion that York did not breach its contract with Medalion. The appellee's status as a holder in due course is of no importance if the initial defense asserted against York, as assignor or transferor, is not good. The District Court therefore found the appellants liable for the balance due on the promissory notes in accordance with their guaranty agreements.

■ It further appears that some time during the course of the trial the appellants submitted an additional pleading asserting a new defense that the appellee was in the business of making loans of money or personal credit upon security, and had charged interest greater than that permitted by the statutes of Colorado. The District Court concluded that the Colorado statutes did not prevent the appellee from enforcing the appellants' obligations but gave no particulars. The record before us reveals no evidence whatever bearing on the issues of whether the appellee or York were "lenders" within the Colorado statutes, whether they were or were not licensed, or whether the transactions in question were covered by the Colorado statutes. Insofar as the record shows, the appellants interposed an alternative defense but failed to offer any evidence from which the trial court could make findings and conclusions. It would thus appear that the appellants cannot now complain of the trial court's judgment when it was their burden to go forward with the evidence relating to the defense of excessive interest. See 91 C.J.S. Usury § 114; Gilbert v. Hudgens, 92 Colo. 571, 22 P.2d 858 (1933).

The appellants also urge that the District Court erred by awarding judgment for the full balance due on the promissory notes. The promissory notes do not reveal that the total face amounts are the sums of "cash selling price" and "credit service charge," as shown by the chattel mortgages, which were also introduced in evidence. The appellants have presented several alternative computations purporting to show that the judgment awarded is excessive because the District Court made no allowance for unearned interest. These computations are in some instances related to various Colorado statutes. However, it appears that the appellee's cause of action was on the promissory notes and the guaranty agreements. The appellants have referred us to no authority wherein judgment for the balance of the face amount of a defaulted promissory note was reduced by unearned interest, as computed from the terms of an underlying chattel mortgage, nor does the record disclose that such an argument was presented to the trial court prior to its judgment. It does not appear that the appellants referred the trial court to any Colorado cases or statutes, or to any authority whatever, for the proposition that the "credit service charge" integrated into the total face amount of the two promissory notes should be subtracted pro rata from the balance due on the notes. In our view the appellants' arguments on appeal, unsupported by authority, are a belated effort to retry the case at the appellate level on theories not presented to the trial court. See First National Bank of Dodge City, Kansas v. Perschbacher, 335 F.2d 442 (10th Cir.).

■ It seems clear that the District Court awarded judgment for the unpaid balance of the promissory notes without being asked to inquire into their origin to determine the character of the obligations they represented It was the responsibility of the appellants to come forward during trial with arguments and authorities demonstrating that a judgment for the unpaid balance of the promissory notes would be incorrect under the circumstances of the case at bar. This the appellants failed to do. The trial court properly entered judgment for the unpaid balance of the promissory notes.

■ Two additional issues are raised by the appellants. It is urged that the

District Court erred by awarding $10,-000.00 attorney's fees because such fees were not expressly included in the appellee's prayer. The written agreement between the appellee and its counsel, disclosing a fee of $10,000.00, was admitted in evidence. The guaranty agreements executed by the appellants, also admitted in evidence, provide that the guarantors "shall pay 15% of the amount" as attorney's fees. The evidence established that the appellee was entitled to recover attorney's fees under the guaranty agreements. It was not error to award such fees even though they were not included in the appellee's ad damnum clause. See Rule 54(c), Fed.R.Civ.P.; Couto v. United Fruit Co., 203 F.2d 456 (2d Cir.); Collins v. Government of Virgin Islands, 236 F.Supp. 441 (D.V.I.).

The final issue raised by the appellants is that it was error for the District Court to permit the appellee's witness Willman to testify in rebuttal. The appellants objected to Willman's testimony on the ground that he had not been endorsed as a witness, nor were the appellants advised that Willman would be called in accordance with the pretrial order, which required counsel to notify the opposing party at least twenty days in advance of the name and address of the witness and the general subject matter of his testimony. In view of the issues framed in the pretrial conference, it does appear that the need for Willman's testimony could have been anticipated by counsel for the appellee, and that counsel for the appellants could have been notified. However, the trial judge, who was not the same judge that presided at the pretrial conference, expressed some concern about the issues being tried and permitted the witness to testify over the appellants' objection. Although the appellants were not notified that Willman might be called as a witness, we believe the decision was a matter within the sound discretion of the trial court, and there was no error.

Affirmed.