513 P.2d 1273

**Frederick E. MORRIS, Plaintiff-Appellee Cross-Appellant,**

**v.**

**DODGE COUNTRY, INC., and New Mexico Leasing Company, a New Mexico corporation, and M. Hahn, Defendants-Appellants Cross-Appellees.**

**No. 1143.**

Court of Appeals of New Mexico.

June 27, 1973.

Rehearing Denied July 19, 1973.

Certiorari Denied Aug. 16, 1973.

---◆---

Frank P. Dickson, Jr., Branch, Dickson & Dubois, P. A., Albuquerque, for defendants-appellants.

Joseph D. Beaty, Donald Klein, Jr., Albuquerque, for plaintiff-appellee.

## OPINION

WOOD, Chief Judge.

This appeal involves an alleged conspiracy to defraud in connection with a car sold to plaintiff. The issues presented are: (1) evidence of a conspiracy; (2) an instruction as to how conspiracy may be proved; and (3) different jury verdicts against the alleged co-conspirators.

The car involved was obtained by Dodge (Dodge Country, Inc.) from the manufacturer. Dodge sold the car to Leasing (New Mexico Leasing Company). Leasing leased the car to a rental agency, who rented the car to its customers. Upon expiration of the lease, the rental agency returned the car to Leasing. Leasing then sold the car back to Dodge. Dodge, through its employee Hahn, sold the car to plaintiff. According to plaintiff, representations as to the car's history differed substantially from the history outlined in this paragraph. In addition, the mileage on the car was represented as 728 miles. The evidence is that the car's mileage was 9150 miles when sold to plaintiff.

Plaintiff sued for damages, alleging fraud on the part of Dodge and Hahn and a conspiracy to defraud on the part of all three defendants. The jury's verdict was in favor of Hahn. Its verdict was against Dodge and Leasing.

No question is raised in this appeal as to the existence of fraud; the issues raised go to the conspiracy aspect of the case.

*Evidence of conspiracy.*

■ For a conspiracy to exist there must be a common design or a mutually implied understanding; an agreement. First National Bank of Dodge City, Kansas v. Perschbacher, 335 F.2d 442 (10th Cir. 1964); Hedrick v. Perry, 102 F.2d 802 (10th Cir. 1939); State v. Deaton, 74 N.M. 87, 390 P.2d 966 (1964); State v. Farris, 81 N.M. 589, 470 P.2d 561 (Ct.App.1970). A conspiracy may be established by circumstantial evidence; generally, the agreement is a matter of inference from the facts and circumstances, including the acts of the persons alleged to be conspirators. State v. Deaton, supra. The question is whether the circumstances, considered as a whole, show that the parties united to accomplish the fraudulent scheme. Hedrick v. Perry, supra. In answering this question, we consider the evidence in a light most favorable to support the verdict, disregarding evidence and inferences to the contrary. Mascarenas v. Gonzales, 83 N. M. 749, 497 P.2d 751 (Ct.App.1972).

■ Leasing asserts there is no evidence that it was a part of any conspiracy to defraud. Plaintiff asserts the ". . . conspiracy . . . involved the common design of increased profits resulting from sale of an automobile misrepresented as to both prior use and true mileage . . . ." Plaintiff claims the evidence permits the inference that Leasing was a part of this conspiracy.

Plaintiff's theory of a common design is based on the relationship between Dodge, Leasing and Lloyd McKee. McKee was a stockholder and director of both Dodge and Leasing, and an officer of Leasing. Leasing did a substantial amount of business purchasing cars from and selling cars back to both Dodge and McKee. There is evidence showing a very close relationship between Leasing and McKee. There is no evidence showing a similarly close relation-

ship between McKee and Dodge or between Dodge and Leasing. When Dodge went out of business, several of Dodge's employees went to work for McKee.

Thus, the evidence of conspiracy between Dodge and Leasing is three items: (1) McKee was a stockholder and director of both; (2) there were substantial business dealings between Dodge and Leasing; and (3) after Dodge went out of business, Dodge employees went to work for McKee.

From this evidence plaintiff asserts three inferences may be drawn:

1. Dodge and Leasing shared a motive to increase profit by lowering mileage on automobiles. Dodge and Leasing were separate businesses. Assuming both had a profit motive, that motive does not show an agreement as to how profit was to be increased. Further, this claim assumes mileage was lowered on more than one automobile. There is no evidence that mileage was lowered on any but the car purchased by plaintiff.

2. Leasing was aware of and participated in a scheme to increase the return from sale of its "used" cars by increasing attractiveness to buyers by lowering the odometer reading and disguising prior use. No such inference arises from the evidence. The only evidence is to the contrary. That evidence is that when Leasing resold the car to Dodge the odometer reading was correct and Leasing was paid wholesale value. There is no evidence that Leasing participated in any way from the proceeds of the sale by Dodge to plaintiff.

3. ". . . The nature of the acts done is such that a reasonable man could infer that all of the transactions involved were intended to increase profits and turn-over rate on these rental agency cars, for the benefit of the common owner of the corporations, Lloyd McKee . . . ." Again plaintiff assumes acts, in the plural, from the evidence of one act of mileage tampering. Again plaintiff would infer increased profits to Leasing as a result of mileage tampering when the only evidence

is that the tampering occurred *after* Leasing resold the car to Dodge.

The evidence of conspiracy on the part of Leasing was insufficient to raise a jury question. Its motion for a directed verdict should have been granted.

*Instruction as to how conspiracy may be proved.*

■■ Dodge and Leasing assert an instruction was erroneous which informed the jury how a conspiracy may be proved. Two objections presented to the trial court are argued here. The first is that there is no evidence of conspiracy on the part of Leasing. We agreed with this view in the first issue discussed. The second is that the instruction applied a "wrong rule" to conspiracy. Objections must be made to an instruction if error is to be preserved for appeal. Section 21–1–1(51)(1)(i), N. M.S.A. 1953 (Repl.Vol. 4). Further, the objection must specifically point out the claimed defect. Scott v. Brown, 76 N.M. 501, 416 P.2d 516 (1966); McBee v. Atchison, Topeka and Santa Fe Railway Co., 80 N.M. 468, 457 P.2d 987 (Ct.App.1969). The objection, "wrong rule," is similar to an objection that an instruction is an incorrect statement of the law. Such an objection is insufficient, not being specific. *McBee,* supra.

*Different verdicts against alleged co-conspirators.*

The verdicts against Dodge and Leasing differed in the amount of punitive damages awarded. By cross-appeal, plaintiff asserts the trial court should have granted its motion to combine the verdicts and enter one joint and several verdict against both Dodge and Leasing. We do not reach this question since there is no evidence to support any verdict against Leasing.

The judgment against Leasing is reversed. The judgment against Dodge is affirmed. The cause is remanded for further proceedings consistent with this opinion.

It is so ordered.

HERNANDEZ, J., concurs.

SUTIN, J., dissents.

SUTIN, Judge (dissenting).

I dissent. This judgment should be affirmed.

It has long been the policy of appellate courts to alert the legal profession to read and follow the rules of appellate procedure. This policy has failed. One reason is: Appellate courts throw appellate rules of procedure into the wastepaper basket when it desires to reverse a judgment in the court below. Another reason is: Appellate rules of procedure are not followed. This court believes that appellate rules of procedure are only a guide which appellate attorneys should attempt to comply with.

Perhaps efficiency in judicial administration must sometimes be subordinated to the interests of justice and courts of appeal should hear each case on the merits. Fahy, Observations Arising From Appellate Experiences, 34 Wis.Bar Bulletin, 52, 55 (1961). If this principle controls then the Supreme Court should modify its rules because rules "rarely, if ever, reaches perfection." Fontron, Rules of Appellate Procedure Eight Years Later, 41 Journal of Kans.Bar Ass'n. 205, 206. When rules are not followed our time and energy have been wasted.

In Esterdahl v. Wilson, 252 Iowa 1199, 1208, 110 N.W.2d 241, 246 (1961), the court said:

The so-called technicalities of the law are not always what they seem. When they establish an orderly process of procedure, they serve a definite purpose and are more than technical; they have substance, in that they lay down definite rules which are essential in court proceedings so that those involved may know what may and may not be done, and confusion, even chaos, may be avoided. They are necessary; without them litigants would be adrift without rudder or compass.

Defendants did not comply with § 21–2–1(15)(6), (15)(16)(a), (d)(iv) and (e), N.M.S.A. 1953 (Repl.Vol. 4). Accordingly, we should decline to review the claimed errors. Tafoya v. Tafoya, 84 N.M. 124, 500 P.2d 409 (1972); Crosby v. Basin Motor Company, 83 N.M. 77, 488 P.2d 127 (Ct.App.1971).

The majority of the court, desiring to reverse, cast aside compliance with appellate rules of procedure. It then searched the record as an adversary to become the fact finder in place of the jury. This was an all woman jury.

Lloyd Walter McKee and his wife were directors and stockholders of New Mexico Leasing (Leasing). Mr. McKee was also vice-president and secretary-treasurer. He was a director and stockholder of Dodge Country (Dodge) and represented the stockholders on the board.

Leasing was a division of Lloyd McKee Motor. It had a Chrysler license and 75% of its fleet were Chrysler products. Chrysler Motors Corporation had a lease-rental value plan with Dodge as the direct dealer and Leasing as the qualified leasing or rental company. Both companies represented they would be bound by the official rules of Chrysler Motor Corporation. Dodge represented that Leasing was the purchaser of the vehicles and it made delivery to Leasing and Leasing represented it took delivery. After leasing services, Leasing sold its cars back to Dodge. The president of Leasing worked for and was in and out of Lloyd McKee Motors 10 to 20 times a day. Leasing purchased 150 to 200 Chrysler cars per year and 100 or 150 per year from Dodge. As president, he signed and approved all cars returned from leasing and sold to Dodge.

The testimony of both McKee and the president of Leasing was vague and uncertain about the official relationship of each with the defendant corporations, and the relationship of both companies.

The president of Leasing, the manager of Dodge, and defendant Hahn, an employee of Dodge, were each served with

process at Lloyd McKee Motors. Leasing was also known as McKee Lease and Rental Company at the time Avis leased the car in question from Leasing. The car was re-sold by Leasing to Dodge a month before plaintiff purchased it.

When plaintiff purchased the car from Dodge, the mileage on the odometer read 728. When he received a warranty from Chrysler Corporation, the mileage was stated as 9,150.

On motion for judgment n.o.v., the trial court refused to set aside the jury verdict because of the relationship of McKee to the various companies and the relationship of the two businesses. He believed the jury took that into consideration in arriving at a verdict; that the jury believed there was knowledge on behalf of Dodge and Leasing; that it was impossible to determine who actually altered the odometer, but the jury found that McKee and his interlocking corporations had something to do with it.

The trial court was right. An issue of fact on conspiracy existed. The majority opinion is wrong. How easy it is on appeal to challenge the plaintiff's brief and not the defendants. How simple it is to accept facts favorable to the loser as well as inferences to be drawn therefrom. How rewarding it is to the loser for this court to judge the credibility of the witnesses.

Under a charge of conspiracy, it is not necessary for plaintiff to prove that Dodge and Leasing came together and agreed upon a method of operation just before Dodge went bankrupt. Conspiracy is rarely susceptible of proof by direct evidence. Conspirators are seldom caught in the act like 20th century "Watergate." The law recognizes the intrinsic difficulty in proving a conspiracy. It is often discovered from the nature of the acts done, the relation of the parties, the interests of the alleged conspirators and other circumstances, irrespective of whether one of the parties was a direct actor or the degree of his activity. Tuman v. Brown, 59 Cal.App.2d 16,

138 P.2d 363 (1943). In Scheele v. Union Loan & Finance Co., 200 Minn. 554, 563, 274 N.W 673, 678 (1937), the court said:

Conspirators do not make minutes of their machinations, progress, and objectives. Seldom, therefore, can conspiracy be proved by other than circumstantial evidence. It is only by assembling the results, with such evidence as may be of the progress thereto by the participants, that the victim can ever make a case of conspiracy. If in the end there is a completed structure of result, the frame of which has been furnished piecemeal by several individuals, the parts when brought together showing adaption to each other and fitness for the end accomplished, it is at least reasonable to infer concert in both planning and fabrication.

All that is necessary to create an issue of fact for the jury is for plaintiff to present facts and circumstances—pieced together and considered as a whole—which a jury may, by implication, determine that the parties united in an understanding way to accomplish the fraudulent scheme. See cases cited in majority opinion.

Leasing, on appeal, did not present any issues raised in the majority opinion. It relied solely on *Perschbacher*. It said:

As cited above, in order to show civil conspiracy the evidence *must* be introduced to show an *agreement* or scheme between or among the alleged conspirators. First National Bank of Dodge City vs. Perschbaker (sic), 335 F.2d 442 (10th Cir. 1964). Nowhere in the record can be found any evidence whatsoever, much less "substantial" evidence to indicate any *agreements* between or among any of the parties to this lawsuit. [Emphasis by Leasing]

"It assumes the aspect of that test between mushrooms and toadstools, which is that if the eater is killed it was toadstools." State v. Minella, 177 Iowa 283, 287, 158 N.W. 645, 647 (1916). This contention by Leasing fails to establish the right to a directed verdict. No formal agreement is

necessary to constitute an unlawful conspiracy. Business behavior is admissible circumstantial evidence from which the jury may infer agreement. Norfolk Monument v. Woodlawn, 394 U.S. 700, 704, 89 S.Ct. 1391, 22 L.Ed.2d 658 (1969).

The evidence was sufficient to support the verdict of the jury. Tuman v. Brown, supra; Scheele, supra; Rogers v. Grua, 215 Cal.App.2d 1, 30 Cal.Rptr. 39 (1963); Amsbury v. Harper, 87 Ind.App. 119, 157 N.E. 292 (1927); Berns v. Usrey, 86 Ind. App. 38, 155 N.E. 717 (1927); Hewitt v. Westover, 86 Ind.App. 505, 158 N.E. 631 (1927); Trebelhorn v. Bartlett, 154 Neb. 113, 47 N.W.2d 374 (1951).

It is not necessary to determine plaintiff's cross-appeal.