MARGARET O'NEILL, as Administratrix ·of the Estate of JOHN J. O'NEILL, Deceased, Appellant, *v.* MONTEFIORE HOSPITAL et al., Respondents.

First Department, June 28, 1960.

*Benjamin Adler* of counsel (*Gustave G. Rosenberg* with him on the brief; *Gustave G. Rosenberg* and *Lawrence M. Rosenberg,* attorneys), for appellant.

*Harold Shapero* of counsel (*Barton Ingraham* with him on the brief; *Martin, Clearwater & Bell,* attorneys), for Frank Craig, respondent.

*John Nielsen* of counsel (*John P. Smith,* attorney), for Montefiore Hospital, respondent.

*Per Curiam.* In this action for the wrongful death of John J. O'Neill, who died of a heart attack on the morning of June 29, 1952, the widow sought recovery against a hospital for failure to render necessary emergency treatment, and against a physician for his failure and refusal to treat the deceased. Since the complaint against the hospital was dismissed at the trial at the close of plaintiff's case and the complaint against the doctor was dismissed at the conclusion of all of the evidence, the question posed on this appeal is whether plaintiff made out a prima facie case sufficient for submission to the jury. In other words, the issue presented is whether, under the circumstances hereinafter described, there was a duty owing respectively by the hospital and the doctor to examine and treat plaintiff's deceased husband.

We need not emphasize that since this case is one to recover for wrongful death, the plaintiff is not held to the degree of proof required from a plaintiff seeking recovery in his own right (*Noseworthy* v. *City of New York,* 298 N. Y. 76; *Swensson* v. *New York, Albany Desp. Co.,* 309 N. Y. 497). Moreover, upon the dismissal of the complaint, the plaintiff is entitled to the benefit of every inference favorable to her (*De Wald* v. *Seidenberg,* 297 N. Y. 335), and, if negligence may be reasonably inferred from the evidence proffered by the plaintiff, the question should be submitted to the jury (*Betzag* v. *Gulf Oil Corp.,* 298 N. Y. 358; *Cornbrooks* v. *Terminal Barber Shops,* 282 N. Y. 217).

Briefly, the facts, as they appear in the record, are that the plaintiff awoke shortly before 5:00 A.M., and saw her husband standing at the window, rubbing his arms and chest. His mouth was open " and he was trying to get as much air as he possibly could." He was perspiring, his face was white as contrasted with his normally ruddy complexion, and he complained of severe pains in his chest and arms. With the assistance of the plaintiff, O'Neill dressed and walked to the hospital, which was three blocks away. He stopped frequently on the way in order to rest and to find a taxicab, but none was available.

It appears that the hospital maintained an emergency room or clinic. When Mr. and Mrs. O'Neill arrived at the hospital,

the doorman conducted them to the nurse in charge of the emergency room. The plaintiff told the nurse that the deceased was very ill, was suffering chest and arm pains, and she thought he was having a heart attack, and she requested the services of a doctor. At that point, Mr. O'Neill mentioned that they were members of the Hospital Insurance Plan (hereinafter referred to as HIP). Thereupon the nurse stated that the hospital had no connection with HIP and did not take care of HIP patients. After reflecting for a minute or two, the nurse stated, "I'll try and get you a HIP doctor," and then telephoned the defendant Craig, telling him that the deceased was in the emergency room of the hospital, complaining of the pains hereinbefore described. She then handed the telephone to Mr. O'Neill who described his pains to Dr. Craig, and then, after a pause, stated, "Dr. Kirstein." After another pause Mr. O'Neill said, "Well I could be dead by 8 o'clock." When the deceased concluded the telephone conversation, he informed the nurse that Dr. Craig had told him to go home and come back when HIP was open. Mrs. O'Neill, however, asked the nurse to have a doctor examine her husband since it was an emergency. Disregarding the request, the nurse told her that their family doctor would see Mr. O'Neill at 8 o'clock, to which he again replied, "I could be dead by 8 o'clock."

When examination or treatment at the hospital was refused, the plaintiff and the deceased left and returned home on foot, pausing occasionally to permit him to catch his breath. After they arrived at their apartment, and as the plaintiff was helping her husband to disrobe, he fell to the floor and died before any medical attention could be obtained.

Insofar as the cause of action against Dr. Craig is concerned, the proof indicates and the court found that the plaintiff and her husband were members of the Montefiore Group of HIP. Two of the doctors composing that group, and under contract with HIP to treat its members, were Doctors Kirstein and Craig, the former being the physician ordinarily consulted by the O'Neills, while the latter was the doctor on call on the morning in question.

Dr. Craig confirmed Mrs. O'Neill's testimony that he received a phone call from the Montefiore Hospital emergency room and spoke to the deceased. Dr. Craig testified in some detail concerning that conversation, and related the inquiries he made concerning symptoms, prior episodes, electrocardiograms, and other items of the patient's medical history. He then went on to state that he offered to come to the emergency room and make an examination, but Mr. O'Neill declined, stating that he

felt better and would prefer to wait to see Dr. Kirstein who would be available at 8 o'clock.

We are not called upon to decide whether, by his contract with HIP, Dr. Craig assumed to examine and treat the deceased and failed to do so as distinguished from whether he, defendant Craig, independently undertook or assumed to examine and treat and failed to exercise due care in so doing. Perhaps a more complete development of the facts in that regard might have been desirable. Thus whether, as the plaintiff claimed, there was an abandonment of the patient by the doctor, or as the defendant claimed there was a refusal to accept a proffered examination presents a question of fact which should have been submitted to the jury.

However, from the proof in the record, we must hold that the jury could have concluded that Dr. Craig undertook to diagnose the ailments of the deceased and could have decided whether he abandoned the patient, inadequately or improperly advised him, or, conversely, made a proper diagnosis fully appropriate under the circumstances, or offered an examination which was rejected.

The law is settled that a physician who undertakes to examine or treat a patient and then abandons him, may be held liable for malpractice (*Meiselman* v. *Crown Heights Hosp.*, 285 N. Y. 389; see Ann. 57 A. L. R. 2d 432–464).

With respect to the action against the hospital, there is also a question of fact presented which should have been submitted to the jury. That question is whether the conduct of the nurse in relation to the deceased was in the nature of a personal favor to him or whether her conduct was that of an attaché of the hospital trying to discharge her duty, and if so, whether what she did was inadequate. So, too, whether the alleged request of the nurse for an examination of Mr. O'Neill, following the telephone conversation with Dr. Craig, and the nurse's refusal to have Mr. O'Neill examined at the hospital constituted negligent conduct, would also be a question for the jury. In this posture it matters not, insofar as the liability of the hospital is concerned, whether any act of the nurse was a medical or administrative one (*Bing* v. *Thunig*, 2 N Y 2d 656).

In this case the plaintiff's proof was prima facie sufficient to permit, but not to mandate, the inference that the nurse in charge of the emergency ward undertook to provide medical attention for the deceased. In sum, this was a question of fact for the jury. It was error, therefore, to dismiss the case against the hospital at the close of the plaintiff's case. Whether there was a reasonable fulfillment of any obligation undertaken is

a matter of defense and a determination of that issue is for the jury.

The judgment should, therefore, be reversed on the law and a new trial ordered, with costs to abide the event.

McNALLY, J. (concurring and dissenting). I concur in the order for reversal and for a new trial as against defendant Frank Craig. I dissent and vote to affirm the dismissal of the complaint against defendant Montefiore Hospital. Through the efforts of the hospital's nurse, the decedent had been enabled to communicate by telephone with Dr. Craig who had knowledge of the decedent's presence at the hospital. Dr. Craig did not indicate in any manner that emergency treatment was required nor did he direct or request the admittance of the decedent as a patient to the hospital. Any action by the nurse contrariwise would not have been in keeping with her position. It is my view that the conduct of the nurse was by way of favor and I fail to see any legal basis for liability on the part of the hospital.

BREITEL, J. P., RABIN and VALENTE, JJ., concur in Per Curiam opinion; McNALLY and STEVENS, JJ., dissent in part and vote to affirm as to defendant Montefiore Hospital in dissenting opinion by McNALLY, J.

Judgment reversed on the law and a new trial ordered, with costs to abide the event.