810 P.2d 353

Jack C. SUTHERLIN, Jr., as Administrator and Personal Representative of the Estate of Mark Sutherlin, Deceased, and on Behalf of the Estate of Mark Sutherlin, Deceased, Plaintiff–Appellee,

v.

Adriana FENENGA, M.D., Defendant–Appellant.

Nos. 10510, 10527.

Court of Appeals of New Mexico.

Jan. 24, 1991.

Certiorari Denied April 4, 1991.

G.L. Spence, Robert P. Schuster, Philip White, Spence, Moriarity & Schuster, Jackson, Wyo., Dick A. Blenden, Paine, Blenden & Diamond, Carlsbad, for plaintiff-appellee.

Ranne B. Miller, Alice Tomlinson Lorenz, Miller, Stratvert, Torgerson & Schlenker, P.A., Albuquerque, for defendant-appellant.

William H. Carpenter, Carpenter and Goldberg, Michael B. Browde, Albuquerque, amicus curiae—NM Trial Lawyers Ass'n.

Bruce Hall, Edward Ricco, Ellen G. Thorne, Rodey, Dickason, Sloan, Akin & Robb, P.A., Albuquerque, amicus curiae—NM Hosp. Ass'n.

Thomas R. Rushton, Ass't Atty. Gen., Santa Fe, Paula J. Cotitta, Jim Dines,

Dines & McCary, P.C., Albuquerque, amicus curiae—NM Dep't of Ins.

## OPINION

DONNELLY, Judge.

Defendant Dr. Adriana Fenenga appeals from a judgment entered in a wrongful death and medical malpractice action following a jury trial awarding plaintiff Jack C. Sutherlin, Jr., the personal representative of the estate of his minor son, Mark Sutherlin, deceased, compensatory and punitive damages. Plaintiff also pursues a cross-appeal challenging the trial court's reduction of compensatory damages in accordance with the statutory limitation imposed by NMSA 1978, Section 41–5–6 (Repl. Pamp.1986).

We first discuss six issues summarily. We then discuss (1) whether the trial court erred in refusing to give defendant's tendered instruction on sudden emergency; and (2) whether questions and references to insurance by plaintiff's counsel during voir dire constituted reversible error. Because we determine that the judgment should be vacated and the cause remanded for a new trial, we do not address other issues raised by defendant or plaintiff's claims raised on the cross-appeal that the trial court erred in reducing the award of compensatory and punitive damages, or plaintiff's challenge to the constitutionality of Section 41–5–6 limiting the amount of compensatory and punitive damage awards.

FACTS

Decedent Mark Sutherlin, age 16, injured his right knee in a sports accident. On December 17, 1981, he was admitted to Memorial General Hospital in Las Cruces to undergo surgery to repair his knee. He was operated on the next day. Defendant, Dr. Fenenga, was the anesthesiologist for the operation.

Plaintiff presented evidence indicating that the anesthesia machine used by defendant malfunctioned during decedent's operation. A post-operative examination of the machine indicated that an extra disk in the machine had blocked the expiratory valve and prevented air from escaping Mark's body. The pressure ruptured Mark's left lung, permitting air to escape into his chest cavity, causing subcutaneous emphysema and pneumothorax. As a result of his injuries, decedent died the following day. Plaintiff presented evidence that the same anesthesia machine used during decedent's operation had also malfunctioned previously, during another operation.

Plaintiff's complaint alleged, among other things, that decedent's death was caused by defendant's failure to properly check the machine before the operation, to properly monitor the patient during the operation, and to take prompt and proper action after she became aware of the machine's malfunction. Defendant denied any negligence on her part. She asserted at trial, among other things, that the anesthesia machine was negligently manufactured, that the manufacturer failed to provide adequate warnings and instructions, that the hospital and its staff failed to properly maintain the machine, and that she responded appropriately when confronted with a sudden emergency.

At the conclusion of the trial the jury returned a special verdict awarding plaintiff $1,200,000 in compensatory damages and $2,000,000 in punitive damages. In entering its final judgment, the trial court reduced the compensatory damage award to $500,000 to conform to the limit imposed in Section 41–5–6 of the Medical Malpractice Act.

## I. ISSUES ANSWERED SUMMARILY

(A) *Allowance of Punitive Damage Claim*

Defendant contends that the trial court erred in allowing the issue of punitive damages to be submitted to the jury. She contends that there was no evidence of a causal connection between her alleged negligent acts and decedent's death. *See Cartee v. Lesley*, 290 S.C. 333, 350 S.E.2d 388 (1986); *Biswell v. Duncan*, 742 P.2d 80 (Utah App.1987). She also contends that there was no evidence that her mental state was sufficiently culpable to permit punitive damages.

■ A trial court's decision to submit an instruction on a party's theory of the case or claim to the jury will not be reversed unless it appears that the matter in dispute cannot be sustained by the evidence. *See Thompson Drilling, Inc. v. Romig*, 105 N.M. 701, 736 P.2d 979 (1987); *State ex rel. Goodmans Office Furniture, Inc. v. Page & Wirtz Constr. Co.*, 102 N.M. 22, 690 P.2d 1016 (1984).

■ The trial court determined that defendant's failure to promptly advise the other doctors that she suspected an air embolism was sufficient to support a claim for punitive damages. Defendant contests this ruling, arguing that she believed at the time of the operation that an air embolism was untreatable. She argues that any failure to disclose her suspicion did not, as a matter of law, rise to the level of "reckless indifference" necessary to support a finding of gross negligence. In New Mexico, proof of gross negligence resulting in injury is a valid basis to support an award of punitive damages. *Valdez v. Warner*, 106 N.M. 305, 742 P.2d 517 (Ct.App.1987). In the context of medical malpractice, gross negligence must rise to the level of "reckless indifference." *Gonzales v. Sansoy*, 103 N.M. 127, 703 P.2d 904 (Ct.App.1984).

In the present case, there was evidence from which the jury could have determined that defendant was grossly negligent in failing to promptly advise other physicians of the nature of the emergency, failing to properly check the machine prior to decedent's operation, or failing to properly monitor the patient during the operation. Moreover, there was sufficient evidence from which the jury could reasonably determine that a causal connection existed between decedent's death and defendant's alleged failure to properly monitor the patient and advise the other doctors of the patient's condition during the operation. This evidence was sufficient to support the trial court's ruling permitting the issue of punitive damages to be submitted to the jury.

**(B)** *Abandonment Instruction*

■ Plaintiff submitted a proposed jury instruction pursuant to SCRA 1986, UJI Civ. 13–1801, concerning his claim that defendant abandoned the patient at a time when he was in need of prompt medical attention. Defendant objected to the giving of an abandonment instruction, arguing that it injected a false issue. Defendant also argued that the instruction was unsupported by the evidence. *See State v. Atchison, Topeka and Santa Fe Ry. Co.*, 76 N.M. 587, 417 P.2d 68 (1966).

The court's instruction provided in part that in order to establish "the claim of negligence * * * plaintiff has the burden of proving at least one of the following contentions: * * * Dr. Fenenga, having discovered that her patient, decedent, was in serious threat of injury, or that he had already been injured, failed to take appropriate steps to save her patient and instead abandoned him." A second instruction stated: "A doctor's duty to a patient who is in need of care continues until the doctor has withdrawn from the case. A doctor cannot abandon the patient who is in need of continuing care. A doctor can withdraw by giving the patient reasonable notice under the circumstances." *See* UJI Civ. 13–1115.

Defendant contends that the evidence fails to show that she intended to abandon her patient and instead that it only gives rise to an inference that she failed to meet the required standard of care. *Estate of Smith v. Lerner*, 387 N.W.2d 576 (Iowa 1986); *Dicke v. Graves*, 9 Kan.App.2d 1, 668 P.2d 189 (1983); *see* Annotation, *Liability of Physician Who Abandons Case*, 57 A.L.R.2d 432 (1958). Defendant also argues that abandonment cannot exist under UJI Civ. 13–1801 when the patient is left in the care of an adequate attendant. *Lee v. Dewbre*, 362 S.W.2d 900 (Tex.Civ.App. 1962); *Meeks v. Coan*, 165 Ga.App. 731, 302 S.E.2d 418 (1983). Whether abandonment has occurred is generally a question of fact to be determined by the jury under the circumstances of each case. *See O'Neill v. Montefiore Hosp.*, 11 A.D.2d 132, 202 N.Y.S.2d 436 (1960).

Our review of the record, including defendant's testimony on cross-examination,

indicates that shortly after accompanying decedent to the recovery room, defendant left him in order to administer anesthesia in another operation. Defendant first testified that she remained "continuously" with decedent in order to assist in rendering treatment and that she "felt it was my responsibility" to remain with him "to make certain that he received the proper care." When confronted with hospital records, however, she admitted she had not stayed with the patient.

Under these facts, the issue of defendant's alleged abandonment was a fact question for the jury to decide, and the trial court properly submitted the instruction. The jury could conclude from defendant's own testimony that it was her responsibility to remain with her patient and that her act of leaving the recovery room shortly after the operation constituted abandonment.

(C) *Failure of Court to Instruct on UJI Civ. 13–2008*

■ The trial court gave an instruction in accordance with SCRA 1986, UJI Civ. 13–1801, but failed to give an instruction based on SCRA 1986, UJI Civ. 13–2008. Defendant argues that because the use note for UJI Civ. 13–1801 states that the two instructions are to be given in every case where the issue of damages is submitted to the jury, and because the Committee Comment to UJI Civ. 13–2008 also notes that "[i]t is the intent of the Committee that this subject matter be covered twice," it was error for the trial court to refuse to give both instructions.

■ Uniform jury instructions are to be given when justified by the facts, and a refusal to give such instructions when accompanied by the slightest prejudice to a party constitutes reversible error. *Tobeck v. United Nuclear–Homestake Partners*, 85 N.M. 431, 512 P.2d 1267 (Ct.App.1973). Because the supreme court approved and adopted both instructions, this court has no authority to change them. In *Clinard v. S. Pac. Co.*, 82 N.M. 55, 475 P.2d 321 (1970), the supreme court held that both instructions must be given and reversed

the trial court's ruling because it failed to explain why both were not given. *See also* SCRA 1986, 1–051(D); *Tafoya v. Whitson*, 83 N.M. 23, 487 P.2d 1093 (Ct.App.1971). Here, the trial court explained that it was declining to give UJI Civ. 13–2008 because it had already given an instruction under SCRA 1986, UJI Civ. 13–1830, relating to the measure of damages in actions for wrongful death. UJI Civ. 13–1830 reads, in part, "[i]f you should decide for the plaintiff on the question of liability, you must then fix the amount of damages."

We conclude the trial court erred in failing to give both UJI Civ. 13–1801 and 13–2008. However, in view of the fact that the language of UJI Civ. 13–2008 substantially incorporated similar language contained in UJI Civ. 13–1830, which was given by the court, we find the error to be harmless. *See LaBarge v. Stewart*, 84 N.M. 222, 501 P.2d 666 (Ct.App.1972) (court may properly refuse an instruction where it is repetitious in nature).

(D) *Evidence of Reading*

■ Prior to trial, defendant filed a motion in limine to exclude any reference to allegations that she had read magazines during other operations. The trial court denied the motion, finding such acts relevant to the issue of defendant's professionalism and credibility.

In his opening statement, plaintiff's attorney said that an anesthesiologist is required to remain alert and that "there is no time to read, no time to look at Time magazine, The National Enquirer." Defendant did not object. During cross-examination, defendant denied reading in the operating room. Plaintiff then asked the defendant, "if other doctors, other nurses, other anesthesiologists, said they had seen you do this on numerous times, they would be wrong * * *?" Defendant's objection was sustained. On recross-examination plaintiff asked defendant if she was present when depositions of nurses were taken concerning her reading in the operating room. Defendant objected that the question was improper. The objection was overruled, and defendant said that she had been

present. During plaintiff's cross-examination of Dr. Lindley, defendant objected on the ground of hearsay to a question about whether Dr. Lindley would permit a doctor to read during an operation. This objection was sustained.

■ We find defendant's claim of error on this issue without merit. The trial court sustained defendant's objections to such questioning, except to a question on cross-examination seeking to impeach the defendant. Under SCRA 1986, 11–402, relevant evidence is admissible and, subject to the limitation of SCRA 1986, 11–403, impeachment evidence is relevant, and the credibility of a witness may be attacked by any party. *See* SCRA 1986, 11–607. Similarly, specific instances of a witness' conduct may be inquired into on cross-examination for the purpose of attacking his credibility under SCRA 1986, 11–608(B). Moreover, defendant's objection to the inquiry was not sufficiently specific to preserve error on this issue. *See State ex rel. Human Servs. Dep't v. Coleman,* 104 N.M. 500, 723 P.2d 971 (Ct.App.1986). Under the facts herein, we find no abuse of discretion in permitting defendant to be cross-examined on this issue for the purpose of determining credibility. *See* R. 11–608(B).

### (E) *References to Unadmitted Deposition Testimony*

■ Defendant asserts that plaintiff's counsel improperly referred to unadmitted deposition testimony. We find no error under the record before us. During opening argument plaintiff's attorney stated that a nurse would testify that decedent looked like "an old black man" when defendant first noticed something was wrong. No objection was raised. During cross-examination of Dr. Lindley, plaintiff's counsel asked if he knew that one of the nurses who saw decedent during the operation described him as being "blue as a Concord grape." A hearsay objection was sustained. Plaintiff's counsel then asked Dr. Lindley a hypothetical question requiring him to assume in part that the patient was the "color of a Concord grape or the color of an old black man * * * as another nurse

referred to him * * *." Defense counsel objected, stating that there was "no evidence in the record of that." The court overruled this objection.

Although we agree that as a general rule, under SCRA 1986, 11–705, hypothetical questions must be based on facts in evidence or upon evidence which the propounding attorney assures the court will be admitted into evidence, here, plaintiff's attorney indicated during his opening statement that he would call a nurse who would testify about decedent's color during the operation. *See* SCRA 1986, UJI Civ. 13–209. If an attorney does not present evidence to support a hypothetical question, the opposing party must move to strike the answer in order to preserve the error for review. *See In re Estate of Mora,* 611 P.2d 842 (Wyo.1980). Here, defendant failed to move to strike the evidence to which she now objects.

### (F) *Cross–Examination Concerning Insurance*

■ Defendant asserts that plaintiff improperly injected the issue of insurance before the jury during the cross-examination of Dr. Lindley. Plaintiff inquired whether defense counsel was employed on a case-by-case basis by "any company which provides you [Dr. Lindley] any benefit or protection?" Dr. Lindley said that he was. Plaintiff then asked if the attorney who had represented him at his deposition had also been paid by the same company; Dr. Lindley answered "yes." Defendant objected that this question improperly placed the issue of insurance before the jury and requested a mistrial. The court denied the motion. Dr. Lindley was then asked whether after this lawsuit was filed he became aware that the suit might affect the same company that "provides you certain benefits * * *?"

Plaintiff contends the questions were proper, revealing the witness' potential bias, and suggested why Dr. Lindley's trial testimony differed from the opinions voiced in his deposition concerning the cause of decedent's death. Dr. Lindley testified in his deposition that it was his opinion that

decedent died from injuries caused by a tension pneumothorax. At trial, however, he stated the cause of death was not a pneumothorax but an air embolism.

In *Davila v. Bodelson,* 103 N.M. 243, 704 P.2d 1119 (Ct.App.1985), this court considered whether it was proper to ask an expert witness whether he was covered by insurance. There, plaintiff argued that a physician had a possible interest in the outcome of the case because he was subject to the surcharge authorized under the Medical Malpractice Act. This court held that the trial court's ruling excluding such questioning was not error because the doctor's testimony was corroborative of similar testimony given by other experts. Similarly, plaintiff's cross-examination of Dr. Lindley was not improper. Plaintiff's questions were carefully phrased so as to determine whether Dr. Lindley had a possible bias or prejudice. *See* SCRA 1986, 11–411. *See also Davila v. Bodelson.* Under these circumstances we find no error. *See Mac Tyres, Inc. v. Vigil,* 92 N.M. 446, 589 P.2d 1037 (1979) (evidence of the existence of insurance does not violate Rule 11–411 where it is offered for purposes of impeachment or to demonstrate the bias or prejudice of a witness).

## II. DENIAL OF SUDDEN EMERGENCY INSTRUCTION

■ Defendant contends that the trial court erred in refusing to give her tendered instruction on sudden medical emergency as provided in SCRA 1986, UJI Civ. 13–1113. Defendant asserts that this instruction was supported by evidence that she was confronted by a sudden malfunction of the anesthesia machine during the operation, which gave rise to a medical emergency. *See Romero v. Melbourne,* 90 N.M. 169, 561 P.2d 31 (Ct.App.1977); *Otero v. Physicians & Surgeons Ambulance Serv. Inc.,* 65 N.M. 319, 336 P.2d 1070 (1959). Plaintiff disputes defendant's contention and argues that a sudden emergency, as contemplated in UJI Civ. 13–1113, did not exist, or, alternatively, that any crisis was caused by defendant's own negligence.

UJI Civ. 13–1113 provides in part:

A doctor who, without negligence on his part, is suddenly and unexpectedly confronted with peril arising from either the actual presence or the appearance of imminent danger to the patient, is not expected nor required to use the same judgment and prudence that is required of the doctor in the exercise of ordinary care in calmer and more deliberate moments.

The use note for UJI Civ. 13–1113 states that this instruction, which was specifically designed for use in medical cases, is similar to SCRA 1986, UJI Civ. 13–1617, pertaining to claims of sudden emergency in other types of negligence actions. Referring to UJI Civ. 13–1617, this court has said:

[T]he fact that the party relying on the [sudden emergency] doctrine may have contributed by his negligence to causing the emergency does not preclude giving the sudden emergency instruction. *It is ordinarily a question of fact for the jury whether the negligence of the party contributed to causing the emergency.* If the jury finds such negligence, it does not apply the emergency doctrine; if it finds no such negligence, it goes on to apply the sudden emergency doctrine.

*Trujillo v. Baldonado,* 95 N.M. 321, 323, 621 P.2d 1133, 1135 (Ct.App.1980) (quoting *Martinez v. Schmick,* 90 N.M. 529, 565 P.2d 1046 (Ct.App.1977)) (emphasis added). *See also Linhares v. Hall,* 357 Mass. 209, 257 N.E.2d 429 (1970). In *Linhares,* a child underwent a tonsillectomy and suffered cardiac arrest during the administration of anesthesia. In a suit against the anesthesiologist, the appellate court upheld the trial court's giving of an instruction on sudden medical emergency, finding that the trial testimony supported such instruction.

Defendant and Drs. Ward, Lindley, and Barham each testified at trial that the malfunction of the anesthesia machine gave rise to an emergency or crisis. Plaintiff's counsel inquired of Dr. Lindley, "It was an emergency, wasn't it?" Dr. Lindley agreed, indicating that he thought the problem with the anesthesia machine created an emergency situation. Similarly,

Dr. Ward stated that a pneumothorax was a very rare complication and that subcutaneous emphysema was also an unusual complication. On direct examination by defendant's attorney, Dr. Barham testified that during the operation defendant alerted him to the fact that there was a problem with the patient. Defense counsel asked whether it "was an emergency crisis situation?", and the witness agreed.

The above testimony was sufficient to support defendant's claim of sudden medical emergency, entitling defendant to an instruction on this theory. Failure to give the proffered instruction, we conclude, constituted reversible error.

■ On appeal, we review the record to determine whether evidence was presented which would support the requested instruction. *Martinez v. Schmick; see Whitfield Tank Lines v. Navajo Freight Lines,* 90 N.M. 454, 564 P.2d 1336 (Ct.App.1977). The trial court has a duty to instruct on all legal theories supported by the evidence. *Id. See also* SCRA 1986, 1–051(B).

Although our determination of this issue requires that the case be reversed and remanded for a new trial, in the interests of judicial economy we address other claims raised on appeal which may again arise on retrial.

## III. REFERENCES TO INSURANCE IN VOIR DIRE

Defendant argues that the trial court erred in failing to restrict plaintiff's counsel from improperly referring to insurance matters during voir dire and permitting plaintiff's counsel to (1) question prospective jurors about their current or previous employment with insurance companies; (2) question their knowledge concerning an alleged "insurance crisis;" and (3) voice his personal opinions concerning insurance companies.

### (A) *Questioning Concerning Jurors' Employment*

■ Several of the prospective jurors responded to questions propounded by plaintiff's counsel on voir dire, indicating that they were either currently employed by an insurance company or had previously been employed by an insurance company. We find no error in the trial court's refusal to limit questioning of prospective jurors concerning whether their current or previous employment with insurance companies would influence their verdict. *See Olguin v. Thygesen* 47 N.M. 377, 143 P.2d 585 (1943); *Madrid v. Scholes,* 89 N.M. 15, 546 P.2d 863 (Ct.App.1976). *See also Borkoski v. Yost,* 182 Mont. 28, 594 P.2d 688 (1979).

■ The purpose of voir dire is to enable the parties to determine whether there is any bias or prejudice on the part of prospective jurors and to enable counsel to intelligently exercise challenges. *State v. Brown,* 91 N.M. 320, 573 P.2d 675 (Ct.App. 1977), *cert. denied,* 436 U.S. 928, 98 S.Ct. 2826, 56 L.Ed.2d 772 (1978); *Babcock v. Northwest Memorial Hosp.,* 767 S.W.2d 705 (Tex.1989). The trial court is invested with broad discretion over the scope of voir dire. *Madrid v. Scholes.* Generally, an attorney may properly inquire on voir dire whether a prospective juror is connected with, has any interest in, or is employed by an insurance company, so long as such inquiry is limited in scope and conducted in good faith. *See Olguin v. Thygesen; Madrid v. Scholes; King v. Westlake,* 264 Ark. 555, 572 S.W.2d 841 (1978). *See generally* Annotation, *Admissibility of evidence, and propriety and effect of questions, statements, comments, etc., tending to show that defendant in personal injury or death action carries liability insurance,* 4 A.L.R.2d 761 (1949).

### (B) *Questioning Concerning "Insurance Crisis"*

■ After receiving a favorable ruling about inquiries into potential jurors' involvement with insurance companies, plaintiff's counsel then propounded a series of questions on voir dire exploring whether any of the prospective jurors had any knowledge concerning claims about the existence of an alleged "insurance crisis."

■ Whether it is permissible to question prospective jurors on voir dire concerning their knowledge of claims concerning

an "insurance crisis" is a matter of first impression in New Mexico. The courts in several jurisdictions have prohibited or restricted inquiry into such subject on voir dire. *See Maness v. Bullins,* 19 N.C.App. 386, 198 S.E.2d 752 (1973); *Brockett v. Tice,* 445 S.W.2d 20 (Tex.Civ.App.1969); *Murrell v. Spillman,* 442 S.W.2d 590 (Ky. Ct.App.1969); *Butcher v. Main,* 426 S.W.2d 356 (Mo.1968). *See also Kiernan v. Van Schaik,* 347 F.2d 775 (3rd Cir.1965).

We believe that the proper rule, however, is that a party may properly make a good faith inquiry into such issue on voir dire, subject to appropriate limitations imposed by the trial court, and upon a proper showing that members of the prospective jury panel may have been exposed to media accounts concerning allegations about the effect of jury awards on insurance costs. *See, e.g., Olguin v. Thygesen* (examination of jurors is proper so long as it is conducted in an honest effort to discover matters which reasonably may unduly influence them). *See also Borkoski v. Yost; King v. Westlake; Babcock v. Northwest Memorial Hosp.; Davila v. Bodelson; Kujawa v. Baltimore Transit Co.,* 224 Md. 195, 167 A.2d 96 (Ct.App.1961); *Johnson v. Hansen,* 237 Or. 1, 390 P.2d 611 (1964). *See generally* Annotation, *Propriety and Prejudicial Effect of Trial Counsel's Reference or Suggestion in Medical Malpractice Case That Defendant is Insured,* 71 A.L.R. 4th 1025 (1989). In order to minimize the possibility of prejudice from such inquiry, counsel should preferably alert the court in advance, however, as to the questions sought to be propounded. *Borkoski v. Yost.*

Although we hold that good faith questioning concerning the possible effect of media accounts concerning an "insurance crisis" is proper, we conclude that plaintiff's counsel, in the instant case, exceeded the limit of permissible voir dire by injecting additional personal comments concerning insurance that were clearly prejudicial. The test of whether such inquiry was conducted in good faith is whether the questions were propounded in such manner as to convey an impression that defendant is

in fact insured. *Elford v. Hiltabrand,* 63 Cal.App.2d 65, 146 P.2d 510 (1944). As shown by the record, plaintiff's counsel, after asking a number of general questions to prospective jurors concerning media reports relating to an "insurance crisis," then stated:

> I want to talk to you about it, if I may. How many of you, first of all, believe [there is an insurance crisis]? I mean, we know that television advertisements are put on, they [insurance companies] paid millions of dollars for [these advertisements] and they do that for a reason, and that is to make people believe certain facts.

Defendant objected to these remarks and requested a mistrial. The motion was denied. Defense counsel then asked the court to admonish the jury to disregard counsel's remarks concerning insurance, and the court indicated it would do so later at an appropriate time. At the conclusion of plaintiff's voir dire of the first group of jurors, the court told the panel members that it had permitted inquiry concerning insurance companies for the purpose of determining the panel's attitudes concerning damages. The court also stated that whether or not a party was insured was irrelevant because insurance "has no bearing in this case," and "you are not to speculate * * * as to whether or not either party had any insurance involved in this case." No admonition instructing the jury to disregard the remarks of plaintiff's counsel, however, was given.

Thereafter, voir dire continued, and plaintiff's counsel stated to a prospective juror, in the presence of other panel members:

> Now, you've already told us that [you were employed by an insurance company and that advertising about the insurance crisis] wouldn't affect your judgment in this case one way or the other, but there is something that does bother me a little bit. I have been a lawyer representing the people all my life, not insurance companies. I have a prejudice against insurance companies and I have a prejudice for people * * *. Now, you've been

working for an insurance company on the other side \* \* \* but don't you have the same kind of problems working for them that I have working against them? That is, I work against them, the insurance companies, and I get prejudiced against them.

Defendant again objected and thereafter requested a mistrial. The court denied defendant's request for a mistrial. Later, however, at the conclusion of plaintiff's voir dire of a second group of jurors, it instructed the jury that the existence of insurance was "not an issue in this case, and you are not to take that into account in any deliberations \* \* \* in deciding the case."

▮ Defendant urges that plaintiff's counsel's statements about insurance companies' motives for advertising and plaintiff's counsel's feelings of prejudice against those companies exceeded the limits of good faith questioning concerning this issue on voir dire. We agree.

It is improper to utilize voir dire as a means of alerting members of the jury to the fact that a party may be covered by insurance. *See De Long v. Green*, 229 Ark. 100, 313 S.W.2d 370 (1958); *Speet v. Bacaj*, 237 Va. 290, 377 S.E.2d 397 (1989). Moreover, remarks indicating an attorney's prejudices regarding insurance carriers have the effect of emphasizing to the jury the fact that defendant is insured. *Id.* See, e.g., *Griego v. Conwell*, 54 N.M. 287, 222 P.2d 606 (1950) (attempt to improperly influence jurors against opposing litigants may in specific case constitute reversible error); *Sweet v. Stutch*, 240 Cal.App.2d 891, 50 Cal.Rptr. 9 (1966) (error arises when questions are designed to implant in minds of jury the fact that defendant has insurance).

As observed in the Annotation, *Admissibility of evidence, and propriety and effect of questions, statements, comments, etc., tending to show that defendant in personal injury or death action carries liability insurance*, 4 A.L.R.2d 761, 792 (1949):

In order for counsel to make intelligent use of such rights as he has in the selection of a jury, he is usually allowed considerable latitude in questioning prospective [jury] members. But he must conduct his questioning in good faith. He may not, in the guise of selecting an impartial jury, unnecessarily say or do anything to unfairly prejudice the jury against his opponents in the case. These considerations apply with particular force in actions for damages for personal injuries or death where defendants are protected by liability insurance \* \* \*.

The record reflects that the majority of plaintiff's voir dire involved questioning concerning jurors' attitudes about insurance. The statement by plaintiff's counsel that "they paid millions of dollars for that and they do that for a reason," and counsel's statement voicing his own personal feeling of prejudice against insurance companies because "I work against them," considered in their entirety, we think, were prejudicial and improperly emphasized to the jury counsel's attitudes and the fact that defendant was insured.

Plaintiff argues that the trial court's admonition to the jury that insurance should have no bearing upon their decision in this case cured any error which may have occurred. *See Cardoza v. Town of Silver City*, 96 N.M. 130, 628 P.2d 1126 (Ct.App. 1981); *Safeco Ins. Co. of America v. United States Fidelity & Guar. Co.*, 101 N.M. 148, 679 P.2d 816 (1984). We disagree. Under the facts herein, we conclude that the admonitions by the court were insufficient to correct the prejudice resulting from counsel's improper statements emphasizing the issue of insurance. *See State v. Rowell*, 77 N.M. 124, 419 P.2d 966 (1966) (damage caused by question held not cured by sustaining of objection); *Barton v. Owen*, 71 Cal.App.3d 484, 139 Cal.Rptr. 494 (Ct.App.1977) (proposed voir dire question and jury admonition properly denied, where inquiry and admonition would inject references to medical malpractice insurance crisis).

## CONCLUSION

For the foregoing reasons the judgment of damages is reversed, and the cause is remanded with instructions to award a new trial and for further proceedings consistent with this opinion.

IT IS SO ORDERED.

CHAVEZ, J., and CALDWELL, D.J., concur.