892 P.2d 604

**Isidro SENA, Plaintiff–Appellee,**

v.

**NEW MEXICO STATE POLICE, Defendant–Appellant,**

**Dale M. Scott, and Viking Insurance Co. of Wisconsin, Defendants.**

No. 14444.

Court of Appeals of New Mexico.

Jan. 11, 1995.

Martin J. Chavez and Lorenzo A. Chavez, Chavez Law Offices, Albuquerque, for plaintiff-appellee.

Jeffrey L. Baker, Jacquelyn Robins and Rosemary Dillon, Jeffrey L. Baker & Associates, Albuquerque, for defendant-appellant New Mexico State Police.

' Anthony F. Little, Indian Pueblo Legal Services, Inc., Bernalillo, for defendant Dale M. Scott.

Candace J. Welch, Pelton & O'Brien, Albuquerque, for defendant Viking Ins. Co. of Wisconsin.

## OPINION

DONNELLY, Judge.

The New Mexico State Police (the State Police) appeals from a judgment awarding damages against it following a jury trial. We (1) address two issues summarily; and discuss (2) whether the trial court erred in denying the State Police's motion to bifurcate Isidro Sena's (Plaintiff's) tort claims from his contractual claim against Viking Insurance Company of Wisconsin (Viking), and Viking's counterclaim and cross-claim for subrogation and interpleader; and (3) whether the trial court erred in permitting expert testimony regarding damages alleged to have been suffered by Plaintiff for loss of enjoyment of life. For the reasons that follow, we reverse.

### FACTS

During the morning hours of January 9, 1988, a pickup truck driven by Dale Scott sideswiped a car parked on the side of Interstate 40, east of Grants, New Mexico. Following the accident, Scott failed to stop and continued driving toward Grants. Kenneth Grissom, the owner of the damaged vehicle, got in his car and followed Scott. After the two cars had traveled some distance, Grissom succeeded in getting Scott to stop and discuss the accident. Following some discussion, Scott agreed to drive into Grants and talk to the police. Just outside of Grants, Scott stopped his vehicle and Harriet Pasquale, a passenger riding with Scott, drove the pickup the remainder of the way into Grants. After Scott and Grissom arrived in Grants, two officers from the Grants City Police were summoned.

Shortly thereafter the Grants City Police called State Police Officer B.A. Toler to the scene because the accident was determined to have occurred outside the Grants city limits. Officer Toler questioned both Scott and Pasquale concerning the accident. Toler cited Scott for careless driving and for operating a vehicle without having any proof of insurance. Although Toler determined that Scott smelled of alcohol, he did not test Scott to determine if he had been driving while intoxicated or place him under arrest. Pasquale told Toler that she would take Scott home. Thereafter, Officer Toler permitted Pasquale to drive away in the pickup with Scott seated in the passenger seat. At some point after leaving Grants, Scott switched places with Pasquale and resumed driving the vehicle.

Approximately two and one-half hours later, the pickup driven by Scott crossed the center line of State Road 117 in Cibola County and collided head-on with a truck driven by Plaintiff. Pasquale was killed in the accident, and Plaintiff suffered serious physical injuries, including a broken leg. Scott was given a blood-alcohol test approximately three hours following the collision, and his blood-alcohol level was determined to be .181.

On March 25, 1988, Plaintiff filed suit against Scott, Gloria Riley, the owner of the pickup driven by Scott, the City of Grants, Gilbert and Elizabeth Manning, doing business as Town and Country Liquors, the University of New Mexico Hospital (the UNM Hospital), the State Police, and Viking (Plaintiff's own insurance carrier). Plaintiff's complaint alleged both negligence and contract claims. Plaintiff alleged, inter alia, that Officer Toler negligently failed to perform a field-sobriety test on Scott and failed to arrest him, thereby permitting him to continue to drive. Plaintiff also alleged that Town and Country Liquors negligently served Scott additional alcohol after he had been cited by Toler. Plaintiff's complaint against Viking further alleged that he had a contract of insurance with Viking, including uninsured motorist protection, and that Viking had refused to pay his hospital and medical bills for injuries sustained by him, which arose out of the collision with Scott.

Viking filed an answer to Plaintiff's complaint and also filed a counterclaim and cross-claim for interpleader. Viking admitted that it had issued a policy of motor vehicle insurance to Plaintiff; that it had paid him $1,979.98 under the policy; and that Plaintiff was entitled to the balance of the amount payable under its uninsured motorist bodily injury limit of $25,000, less the amount of a hospital lien claimed by the UNM Hospital. Plaintiff disputed the amount owing to the UNM Hospital. Viking also filed a cross-complaint against the State Police, the City of Grants, and Town and Country Liquors,

seeking to be subrogated for monies paid or payable by Viking to Plaintiff pursuant to its insurance policy.

Prior to trial, the City of Grants and the UNM Hospital were dismissed from the suit. Riley was never served, and Town and Country Liquors settled with Plaintiff. At the time of trial, only Scott, the State Police, and Viking remained as Defendants in the case.

On January 15, 1992, Viking filed a motion to bifurcate trial of the issue of its subrogation claim until such time as Plaintiff's claims against the remaining Defendants had been decided. On January 31, 1992, Viking requested a setting on its motion. Each of the Defendants, including the State Police, concurred in the motion to bifurcate the trial. A hearing on the motion was not scheduled until the day before trial. At that time, Viking withdrew its motion to bifurcate. On the morning of trial, the State Police moved to bifurcate trial of Plaintiff's contractual claim against Viking and Viking's claim for subrogation. The motion was denied. Following a jury trial, the jury returned a verdict in favor of Plaintiff, finding that he had suffered total damages in the amount of $456,400. The jury also found that Scott was thirty-seven percent negligent and that the State Police was sixty-three percent negligent.

## I. *ISSUES ADDRESSED SUMMARILY*

### (A) *Form of Verdict*

■ The State Police argues that the trial court erred in not providing a jury verdict form which permitted it to assign a percentage of fault to Town and Country Liquors. The State Police contends that Town and County Liquors was originally a defendant in the case but settled with Plaintiff prior to trial.

In instructing the jury, the trial court told the jury that the State Police contended that Town and Country Liquors was negligent because, prior to the accident, it sold or served alcoholic beverages to Scott, even though he was under the age of twenty-one. The State Police asserts that over its objections the trial court declined to permit the jury to compare any negligence on the part

of Town and Country Liquors, Scott, and the State Police.

■ Although we agree with the State Police that a trial court must permit the jury to determine the percentage of negligence, if any, on the part of each alleged tortfeasor whether or not they are a party in the case, *Bartlett v. New Mexico Welding Supply, Inc.*, 98 N.M. 152, 159, 646 P.2d 579, 586 (Ct.App.), *cert. denied*, 98 N.M. 336, 648 P.2d 794 (1982), the record here is devoid of any evidence that after being cited by Officer Toler, Scott went to Town and Country Liquors and purchased and consumed any alcoholic beverages. The State Police rested its defense without presenting any evidence that Scott bought and consumed additional liquor from Town and Country Liquors following the issuance of the citation by Officer Toler and the time of the collision with Scott. There is no evidence indicating that Scott's subsequent consumption of alcoholic beverages was a proximate cause of his collision with Plaintiff. *See* SCRA 1986, 13–302B (Repl. 1991) (plaintiff has burden of proof to establish that negligence of defendant was a proximate cause of the alleged injuries and damages). Our review of the record indicates that the only evidence relating to Town and Country Liquors presented at trial was that Plaintiff had originally sued Town and Country Liquors and that Plaintiff's claim was subsequently settled.

■ After it rested, the State Police attempted to reopen its case. Its motion to reopen was denied. As a general rule, the decision whether to permit a party to reopen its case in order to present additional evidence is a matter entrusted to the trial court's sound discretion. *See* SCRA 1986, 1–040(C)(3) (Repl.1992); *see also Foreman v. Myers*, 79 N.M. 404, 408, 444 P.2d 589, 593 (1968) (reopening of case is discretionary with trial court, and its ruling will not be overturned absent a showing of an abuse of discretion); *Riggs v. Gardikas*, 78 N.M. 5, 8, 427 P.2d 890, 893 (1967) (motion to reopen case to permit taking of additional evidence is addressed to sound discretion of trial court). A movant seeking permission to reopen its case must show some reasonable excuse. *Allen v. Burggraf Constr. Co.*, 106

Idaho 451, 680 P.2d 873, 876 (Ct.App.1984). In considering a party's motion to reopen its case to present additional evidence, the trial court should take into account all relevant factors, including the reason the party failed to initially offer such evidence; whether the opposing party will be surprised or unfairly prejudiced by the additional evidence; whether granting the motion would substantially delay the proceedings; the importance of the evidence to the movant's case; and whether cogent reasons exist to deny the request. *See Hollembaek v. Dominick's Finer Foods, Inc.,* 137 Ill.App.3d 773, 92 Ill.Dec. 382, 386, 484 N.E.2d 1237, 1241 (1985); *see also Reagan Equip. Co. v. Vaughn Gin Co.,* 425 So.2d 1045, 1047–48 (Miss.1983); *In re Estate of Viviano,* 624 S.W.2d 130, 133 (Mo. Ct.App.1981).

In the instant case the State Police has not challenged the trial court's ruling denying its motion to dismiss, and, as previously stated, the record is devoid of any evidence that Scott purchased and consumed any alcoholic beverages from Town and Country Liquors. Considering the failure of the State Police to challenge on appeal the trial court's denial of its motion to reopen and the lack of evidence indicating that Scott bought and consumed alcoholic beverages from Town and Country Liquors, under the circumstances presented here, we find no error in the trial court's refusal to allow the jury to compare the alleged negligence of Town and Country Liquors.

### (B) *Claim of Negligence Per Se*

The trial court instructed the jury that it is unlawful for any person who is under the influence of intoxicating liquor to drive any vehicle within this state, and that if the jury found that Officer Toler knew or in the exercise of reasonable care should have known that Scott had been driving while intoxicated and he failed to arrest him, then Officer Toler was negligent as a matter of law. The State Police contends that the trial court erred in giving this instruction because it did not require the jury to determine whether Officer Toler had violated any statute. *See* SCRA 1986, 13–1501 (Repl.1991).

Although the State Police asserts that it objected to this instruction, our review of the record fails to disclose the existence of such objection; hence, the claim of error was not preserved for appellate review. SCRA 1986, 12–216(A) (Repl.1992); *Woolwine v. Furr's, Inc.,* 106 N.M. 492, 496, 745 P.2d 717, 721 (Ct.App.1987) (to preserve claim of error concerning the giving of an instruction, appellant must establish that the issue was properly preserved for appellate review); *see also Mercer v. Tajique Flats,* 91 N.M. 677, 680, 579 P.2d 803, 806 (Ct.App.1978) (failure to object to instruction waives any claim of error on appeal); *Morris v. Dodge Country, Inc.,* 85 N.M. 491, 493, 513 P.2d 1273, 1275 (Ct.App.) (appellant must interpose timely objection to preserve error for appeal), *cert. denied,* 85 N.M. 483, 513 P.2d 1265 (1973).

### II. *FAILURE TO BIFURCATE TRIAL*

■ The State Police argues that the trial court erred in denying its motion to bifurcate Plaintiff's negligence claims from its contract claims against Viking, from Viking's subrogation claims, and in permitting Viking to be a participant in the jury trial. We agree.

Plaintiff's complaint sought damages against Scott, Riley, Town and Country Liquors, and the State Police, and alleged that the negligence of such Defendants resulted in the injuries sustained by Plaintiff. Plaintiff's complaint also alleged, among other things, that at the time of the accident he had a valid contract of insurance policy issued by Viking, which provided him with uninsured motorist coverage. Plaintiff further alleged that although Scott was uninsured, Viking refused to make any payment to Plaintiff in accordance with the terms of the policy.

Viking's answer to the complaint admitted that it had issued a policy of insurance to Plaintiff, but denied that it had failed to pay any amounts due to Plaintiff under the policy. Viking also filed a counterclaim and cross-claim for interpleader admitting that the amount due under its policy was $23,020; that it had paid $1,979.98 in medical payments to Plaintiff; and that it had received a claim and notice of a lien on the proceeds of such insurance policy from the UNM Hospital. Viking alleged that Plaintiff has contest-

ed the amount of the UNM Hospital's lien, and prayed that the trial court determine the proper amount owning to him and to the UNM Hospital.

Viking also filed a cross-claim against the State Police, Town and Country Liquors, and the City of Grants, alleging that they negligently contributed to Plaintiff's accident, and that it should be subrogated for any amounts it is required to pay out to Plaintiff under its policy of insurance. The State Police concurred in Viking's motion to bifurcate. Although Viking filed a motion in January 1992 to bifurcate trial of its subrogation claim until after Plaintiff's case against the other Defendants was decided, the motion was not set for hearing until March 5, 1992, the day before the jury trial was scheduled to commence. Viking withdrew its motion for bifurcation of the trial on March 15, 1992.

On the morning of trial, prior to jury selection, the State Police moved to bifurcate trial of Viking's subrogation claim from the issues to be resolved by the jury. The trial court denied the motion. Subsequently, Viking participated in the jury trial, made an opening statement to the jury, cross-examined witnesses called by Plaintiff and the State Police, and called Elizabeth Taylor, one of its employees, to testify during trial. Taylor testified that Viking had issued a policy of insurance to Plaintiff and that the policy contained a provision providing uninsured motorist coverage. Taylor was cross-examined by Plaintiff's counsel and she testified that at the time of Plaintiff's accident, the State Police was insured, but that Scott was not. Following this statement, the State Police moved for a mistrial. The trial court denied the motion.

■ Plaintiff contends that the State Police waived any objection to the trial court's failure to bifurcate Viking's subrogation claim by its failure to raise any formal objection until the commencement of trial and by its questioning of witnesses concerning the existence of insurance. Plaintiff bases its claim of waiver on the fact that the State Police cross-examined Grissom, a witness called by Plaintiff, and elicited testimony indicating that Grissom's insurance company paid for damages resulting from the initial accident caused when Scott sideswiped Grissom's car. Plaintiff also points out that the State Police introduced a police accident report prepared by Officer Toler indicating that Scott was uninsured, that it questioned Officer Toler as to whether he cited Scott for not having any insurance on the vehicle driven by him, and introduced a copy of the citation issued to Scott.

While it is clear that the State Police elicited testimony and evidence during the trial that served to further acquaint the jury with the fact that Scott was uninsured at the time of his collision with Plaintiff, that Viking had issued a policy to Plaintiff containing an uninsured motorist provision, and that the State Police was an insured party, evidence of these facts was placed before the jury only after the trial court overruled the State Police's motion to bifurcate the trial and the trial court had permitted Viking to participate in the trial of Plaintiff's negligence claims. Thus, we conclude that the trial court erred in denying the motion to bifurcate the trial of Plaintiff's negligence claims from those involving the contract and insurance claims, and that Viking's participation in the jury trial involving Plaintiff's negligence claims was prejudicial and unfairly injected the issue of insurance in this portion of the trial. *See Safeco Ins. Co. v. United States Fidelity & Guar. Co.,* 101 N.M. 148, 150, 679 P.2d 816, 818 (1984). In *Safeco Insurance Co.* our Supreme Court held:

[W]hen subrogated insurers are required by [SCRA 1986, 1–017 (Repl.1992)] to be joined as a party, and the case is to be tried to a jury, the fact of the insurer's joinder is not to be disclosed to the jury. Instead, the insured party shall assert his claim for all damages recoverable from the one who allegedly caused the harm, including any amount for which his insurer would be entitled to subrogation against the defendant or counter-defendant. If it is the insured who has been joined, as in the instant case, the requirement shall be the same. If the injured party or parties should recover damages, the insurer shall then be permitted to prove its subrogation claim to the trial court and, from the proceeds of any recovery, the court shall ap-

portion the recovery between the insured and his insurer according to their respective entitlements.

*Id.*

While it is clear that New Mexico has rejected a blanket rule precluding the introduction of any evidence concerning a party's insured status, absent a showing that evidence of the existence of liability insurance or the absence thereof is offered for another purpose "such as proof of agency, ownership or control, or bias or prejudice of a witness," SCRA 1986, 11–411 (Repl.1994), such evidence is generally inadmissible in a tort action tried to a jury because of its potential for creating prejudice, *see Safeco Ins. Co.,* 101 N.M. at 151, 679 P.2d at 819. *See Mac Tyres, Inc. v. Vigil,* 92 N.M. 446, 448, 589 P.2d 1037, 1039 (1979); *Lopez v. Southwest Community Health Servs.,* 114 N.M. 2, 12, 833 P.2d 1183, 1193 (Ct.App.), *cert. denied,* 113 N.M. 690, 831 P.2d 989 (1992).

In the present case, our review of the record fails to disclose any basis for departing from the rule announced in *Safeco Insurance Co.* and permitting Viking to participate in the jury trial of Plaintiff's negligence claims against the State Police and the other defendants. Denial of the State Police's motion to bifurcate this portion of the trial had the effect of injecting the fact that the State Police was an insured party, that Scott was uninsured, and that Plaintiff, although insured by Viking, had limited coverage. *See Sutherlin v. Fenenga,* 111 N.M. 767, 777, 810 P.2d 353, 363 (Ct.App.) (improper disclosure to jury that defendant is an insured party constitutes reversible error), *cert. denied,* 111 N.M. 678, 808 P.2d 963 (1991).

Although our ruling on this issue necessitates that the judgment be reversed and that the case be remanded for a new trial, we address an additional issue briefed by the parties, and which is likely to arise on retrial.

III. *INSTRUCTION ON LOSS OF ENJOYMENT OF LIFE*

The State Police argues that the trial court erred in permitting Dr. David Hamilton, an economist called by Plaintiff, to testify concerning the economic value of damages for the loss of enjoyment of life, sometimes referred to as hedonic damages, and which were alleged to have been suffered by Plaintiff. A related argument was recently addressed by our Supreme Court in *Romero v. Byers,* 117 N.M. 422, 872 P.2d 840 (1994). In *Romero* the Court held that our Wrongful Death Act permits a personal representative to recover an award of damages both for the value of the loss of earnings of a decedent and for the non-pecuniary value of the decedent's life itself. *Id.* at 428, 872 P.2d at 846. In the present case, evidence was presented at trial that Plaintiff is unable to enjoy certain activities in life, including hunting and fishing, as the result of injuries sustained in the accident.

■ Does the rationale discussed by the Court in *Romero* also extend to personal injury actions brought by a plaintiff for non-fatal injuries? We answer this question affirmatively. We believe that implicit in the reasoning of *Romero* is recognition of the rule that damages are recoverable for the value of the loss of enjoyment of life itself whether or not the injured party is deceased. Justice Franchini, speaking for the Court in *Romero,* noted that "[j]ust as the jury in a personal injury case must determine the monetary worth of nonpecuniary losses, so too must the jury in a wrongful death action determine fair and just compensation for the reasonably expected nonpecuniary rewards the deceased would have reaped from life." *Id.* The *Romero* Court also held that there are two aspects of nonpecuniary damages embraced within the concept of fair and just compensation and that *"[p]ain and suffering* devolves from (1) that which the victim must newly endure and (2) *that which the victim may no longer enjoy." Id.* (emphasis added); *see also Gregory v. Carey,* 246 Kan. 504, 791 P.2d 1329, 1335 (1990) (evidence of loss of enjoyment of life is admissible for consideration by jury in awarding damages and relates to disability, pain, and suffering); *Policastro v. Savarese,* 171 A.D.2d 849, 567 N.Y.S.2d 784, 788 (1991) (loss of enjoyment of life is a factor to be considered in awarding damages for pain and suffering); *Judd v. Rowley's Cherry Hill Orchards, Inc.,* 611 P.2d 1216, 1221 (Utah 1980) (included in mental pain and suffering is the diminished

478

enjoyment of life, as well as the humiliation and embarrassment resulting from permanent scars and disability).

As observed by the authors of the text, 2 Marilyn Minzer et al., *Damages in Tort Actions* Section 8.01 (1994), "The majority of jurisdictions award compensatory damages for one or more intangible elements of injury which have become known generically as 'loss of enjoyment of life' injuries." *See also* Richard A. Palfin & Brent B. Danninger, *Hedonic Damages: Proving Damages for Lost Enjoyment of Living* § 9.1 (1990) (in personal injury cases most jurisdictions allow for the recovery of the plaintiff's lost enjoyment of living). *See generally* Annotation, *Loss of Enjoyment of Life as a Distinct Element or Factor in Awarding Damages for Bodily Injury*, 34 A.L.R.4th 293 (1984).

■ Consistent with the rule in *Romero*, we think it is clear that New Mexico permits proof of nonpecuniary damages resulting from the loss of enjoyment of life in tort actions involving permanent injuries. *Romero*, 117 N.M. at 428, 872 P.2d at 846; *see also Hoskie v. United States*, 666 F.2d 1353 (10th Cir.1981). Similarly, we conclude that where an expert witness has been properly qualified, it is not improper for the trial court to permit an economist to testify regarding his or her opinion concerning the economic value of a plaintiff's loss of enjoyment of life. *See* Minzer et al., *supra*, § 8.23, at 8–62; *see also Shamalon Bird Farm, Ltd. v. United States Fidelity & Guar. Co.*, 111 N.M. 713, 714–15, 809 P.2d 627, 628–29 (1991) (trial court has wide discretion in determining whether witness is qualified to give expert testimony).

*CONCLUSION*

For the foregoing reasons, the judgment is reversed and the cause is remanded for a new trial consistent with the matters stated herein.

IT IS SO ORDERED.

APODACA, C.J., and FLORES, J., concur.